Argued and submitted January 26, peremptory writ issued April 17, petition for rehearing denied May 15, 1984

STATE OF OREGON ex rel JONES et al,
*Plaintiffs-Relators,*

*v.*

CROOKHAM,
*Defendant.*

(TC A8304-02506, SC 29923)

681 P2d 103

Allan M. Muir, Portland, argued the cause for defendant. Ridgway K. Foley, Jr., P.C., filed the briefs for defendant. With him on the briefs were Schwabe, Williamson, Wyatt, Moore & Roberts, Allan M. Muir and James D. Huegli, Portland.

Frank Bosch, Portland, argued the cause and filed the brief for plaintiffs-relators.

CAMPBELL, J.

Linde, J., concurred and filed an opinion.

## CAMPBELL, J.

This is a mandamus proceeding by Jones, a resident of Idaho, and Lyle Jones Insurance and Investments, Inc., an Idaho corporation, to compel the trial court to dismiss a complaint filed against it in Multnomah County Circuit Court by Colonial Leasing Company of New England, Inc., a Massachusetts corporation doing business in Oregon. The question presented is whether Oregon's long-arm statute, ORCP 4L., has sufficient reach to enable an Oregon court to exercise jurisdiction over a non-resident under these facts.[1] We hold that it does not.

Jones owned and operated Lyle Jones Insurance and Investments, Inc. in McCall, Idaho.[2] According to his affidavit, a representative of McCall Office and Home Appliance Company approached him in McCall about purchasing a new copier. In October 1980, Jones decided that he would buy or lease a copier from this company. In McCall he signed a document that Colonial sometimes terms an "application for financing," but appears to be a lease. Colonial's name and its Portland, Oregon, address appear at the top of this document. Colonial is in the business of financing business leases. Jones took possession of the copier in McCall, Idaho, and signed another document acknowledging receipt of the copier. This document also had the Colonial name and Portland address at the top.

Jones made two payments for the copier to McCall Office and Home Appliance Company in McCall. After these payments he received monthly statements from Colonial and sent payments directly to its Portland office. Later Jones sold his business and discontinued making payments. The people who bought the business, and who apparently entered into a stock sale and purchase agreement with Jones, also evidently failed to make payments.

---

[1] Originally Colonial relied on a forum selection clause of the lease. It has since abandoned this position, perhaps due in part to *Colonial Leasing Co. of New England v. Best*, 552 F Supp 605 (D Or 1982), in which the court found an identical provision in another contract to be invalid because it was "unfair or unreasonable" and held that it should be disregarded.

[2] For the sake of readability, we will use "Jones" to refer to both defendants in the underlying case.

Colonial filed a complaint for breach of the equipment lease and claim on a third party beneficiary contract in the Multnomah County Circuit Court. Colonial had the summons and complaint served on Jones in Idaho. Jones moved to dismiss for lack of jurisdiction. Initially the trial court granted this motion, but on reconsideration denied it. Jones then petitioned this court for a writ of mandamus, and we issued an alternative writ.

■     The burden is on Colonial to allege and prove facts sufficient to establish jurisdiction. *State ex rel Sweere v. Crookham,* 289 Or 3, 7, 609 P2d 361 (1980). Colonial does not contend that a specific jurisdictional provision of the long-arm statute is applicable, so we must examine the general provision, ORCP 4L.:

> "A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances:
>
> "* * * * *
>
> "L. Notwithstanding a failure to satisfy the requirement of sections B. through K. of this rule, in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."

■     Under this provision, we must determine whether exercise of our jurisdiction over these defendants would comport with due process requirements. The issue is whether Jones, by signing a contract with a corporation doing business in Oregon and sending monthly payments pursuant to that contract, purposefully availed himself of the privilege of conducting activities within Oregon, thus invoking the benefits and protections of our laws to an extent that it is fair and reasonable for an Oregon court to exert jurisdiction over him. *Hanson v. Denckla,* 357 US 235, 253, 78 S Ct 1228, 2 L Ed2d 1283 (1958).

■     Colonial argues that Jones initiated the contact by sending the "application for financing" to its Portland office. It further argues that even if Jones had failed to realize he was doing business with a company in Oregon initially, he must have so realized when he received statements and mailed payments to the Portland office, and at that point chose to continue the transaction. Colonial also argues that Jones'

actions caused sufficient economic consequences in Oregon because Colonial forwarded money to McCall to pay for the copier, deposited the money received from Jones into an Oregon bank and the breach will force Colonial to repossess the copier and attempt to resell it.

Colonial relies heavily on *State ex rel White Lbr v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968). In that case, a Florida corporation, a lumber and plywood wholesaler, ordered 20 cars of plywood manufactured to its specifications from plaintiff in Oregon by telephone. A dispute over the suitability of the plywood gave rise to the underlying action. We held that under these facts Oregon had jurisdiction because defendant purposefully availed itself of the privilege of acting in Oregon by telephoning the order. Also important was that the product ordered had to be specially manufactured. The cause of action arose from consequences in Oregon of the defendant's actions and these activities had substantial enough connection with Oregon to make the exercise of jurisdiction over the defendant reasonable.

Jones argues that he did not purposefully avail himself of doing business in Oregon. His desire throughout was to purchase or lease a copier from a local business so that he could be assured of prompt service. The record fails to indicate how Colonial came to be involved in this transaction; likely a third party, perhaps a broker of some sort, actually made the connection between Colonial and McCall Office and Home Appliance Service, which in turn brought the documents to Jones. At any rate, nothing indicates that Jones himself chose to deal with a firm in Oregon rather than one from Idaho or any other state. Jones has been consistent in declaring that he wanted to enter into this transaction with a local firm and that for a period of time, at least, he believed that he had done so.

Colonial had the burden to prove Jones purposefully availed himself of the privilege of doing business in Oregon. We find it failed to sustain this burden.

We are not convinced that either the activities or the consequences relied on by Colonial are sufficient for this state to have jurisdiction over defendants. Boiled down, Jones in Idaho signed a contract with a corporation doing business in Oregon and sent some monthly payments to that corporation at its place of business in Oregon.

■     The reasonableness of a state exercising jurisdiction over non-residents is a case-by-case question. It is a determination "in which few answers will be written 'in black and white. The greys are dominant and even among them, the shades are innummerable.' *Estin v. Estin,* 334 US 541, 545, 92 L Ed 1561, 68 S Ct 1213, 1 ALR2d 1412 (1948)." *Kulko v. California Superior Court,* 436 US 84, 92, 98 S Ct 1690, 56 L Ed2d 132 (1978).

■     Our legislature decided to extend the jurisdiction of the courts of our state to the maximum allowed by the constitution of Oregon and the federal constitution. Because we do not have a due process clause in our state constitution, we must examine the federal constitution to ascertain the limitations on exercising jurisdiction over non-residents. Although the United States Supreme Court has written several opinions concerning the propriety of asserting jurisdiction over out of state defendants, we find none that presents a set of facts comparable to those in the present case.[3]

At first glance *McGee v. International Life Ins. Co.,* 355 US 220, 78 S Ct 199, 2 L Ed2d 223 (1957), might appear to dictate that exercising jurisdiction in this case would not be unreasonable. In *McGee* defendant life insurance company mailed an offer to provide life insurance from Texas to Franklin in California. Franklin accepted and paid premiums from his California home until his death. Although defendant was not shown ever to have conducted any other business in California, its actions were sufficient to allow California to enter a binding judgment. However, the Court explains that a state has a manifest interest in providing redress for its residents when insurers refuse to pay and that residents would be at a severe disadvantage if they were forced to follow an insurance company to a distant state in order to hold it legally accountable. 355 US at 223. This sort of defendant initiation, the manifest state interest and the potential injustice present in *McGee* is absent from the case at bar.

■     We also find it significant that in the present case defendant was not attempting to sell anything to Oregon

---

[3] This includes the most recent opinions, *Keeton v. Hustler Magazine, Inc.,* 52 USLW 4346 (March 20, 1984), and *Calder v. Jones,* 52 USLW 4349 (March 20, 1984), which were decided after the oral arguments in this case.

residents; rather, he was leasing equipment to help him run his business in Idaho. We also note that defendant was leasing a single piece of office equipment that was not extraordinarily expensive. Although defendant was engaged in business, for the analysis of this transaction we consider that he was occupying the role of a consumer, as opposed to a merchant, or someone involved in reselling merchandise.

We find *Neptune Microfloc v. First Fla Util.,* 261 Or 494, 495 P2d 263 (1972), to be in point. There plaintiff initiated a contract for the sale of goods in Florida through its representative. Defendant was an operator of a sewage treatment plant in Florida. No evidence suggested that defendant had previously done business with individuals or companies in Oregon, or that it was likely to do so in the future. The order form was accepted by defendant in Florida and subsequently signed by plaintiff in Oregon. Defendant also signed the purchase order and mailed it to Oregon. This court decided that these facts did not rise to the "transaction of business" in Oregon and that it would not be "fair" to force defendant to litigate the issue in Oregon.

We find that Jones' actions in mailing monthly payments from Idaho to Oregon are insufficient to base an assertion of jurisdiction. As was said in *U-Anchor Advertising, Inc. v. Burt,* 553 SW2d 760, 763 (Tex 1977) *cert den* 434 US 1063 (1978): "Indeed, it can be said that [defendant] has engaged in no 'activity' in Texas, his only 'activity' being the preparation and mailing of checks from his place of business in Oklahoma." In that case, plaintiff's salesman solicited a contract with defendant to place advertisements for defendant in various places in Oklahoma. Plaintiff made the signs in Texas and defendant mailed monthly payments to Texas. That court found defendant's contacts with Texas were minimal and fortuitous. They

> "* * * were not grounded on any expectation or necessity of invoking the benefits and protections of Texas law, nor were they designed to result in a profit from a business transaction undertaken in Texas. The contract was solicited, negotiated and consummated in Oklahoma, and [defendant] did nothing to indicate or support an inference of any purpose to exercise the privilege of doing business in Texas. Simply stated, [defendant] was a passive customer of a Texas corporation

who neither sought, initiated, nor profited from his single and fortuitous contact with Texas." 553 SW2d at 763.

We find that Colonial failed to prove that Jones sought or initiated this contact, and further find that the act of making monthly payments to an Oregon plaintiff is insufficient to require a non-resident to litigate a contract action in Oregon.

Peremptory writ issued.

**LINDE, J.,** concurring.

Rule 4L of the Oregon Rules of Civil Procedure directs courts of this state to take jurisdiction whenever doing so is not inconsistent with the state or federal constitution. Although one might imagine a case where another constitutional issue could be raised, in practice this rule means that an Oregon court has jurisdiction to the limits of due process under the 14th amendment. That, of course, is an issue of federal law to be decided pursuant to the controlling decisions of the United States Supreme Court.

I previously have expressed my doubts about this adoption of a procedural rule that directs court and counsel to turn every case of questionable jurisdiction into an issue, not of Oregon law, but of federal constitutional law. *State ex rel Academy Press v. Beckett,* 282 Or 701, 718, 581 P2d 496 (1978) (Linde, J., concurring). On such an issue, our own precedents are useful only to the extent that they rightly interpret the latest guidance from the United States Supreme Court. When combined with the rather exceptional practice of using our discretionary writ of mandamus as the means to challenge circuit court jurisdiction, the effect is to give this court an interlocutory appellate function that goes no further than to apply the broad and imprecise federal due process tests of jurisdiction to the facts, or alleged facts, of individual cases.

The Court states the issue in the present case to be "whether Jones, [the Idaho lessee of a copying machine] by signing a contract with a corporation doing business in Oregon and sending monthly payments pursuant to that contract, purposefully availed himself of the privilege of conducting activities within Oregon, thus invoking the benefits and protections of our laws to an extent that it is fair and reasonable for an Oregon court to exert jurisdiction over him."

296 Or at 738. The Court takes that criterion from *Hanson v. Denckla,* 357 US 235, 253, 78 S Ct 1228, 2 L Ed 2d 1283 (1958), which in turn cited *Internat Shoe Co. v. Washington,* 326 US 310, 319, 66 S Ct 154, 90 L Ed 95 (1945). *Hanson v. Denckla* itself is not factually similar; it held that Florida did not gain jurisdiction to adjudicate ownership of trust property held by a Delaware trust company, an indispensable party under Florida law, merely because the settler had moved to Florida and from there corresponded with the trustee. Nor is any other Supreme Court decision closely analogous to the present case. Nevertheless, I concur with the Court that if this case reached the Supreme Court, it would probably be decided against jurisdiction in Oregon.

Here it is a lessee under a long-term equipment lease, who is said to have brought himself within the jurisdiction of the forum state, Oregon, by purposefully dealing with an enterprise engaged in lease financing. The more common situation for testing whether the defendant "purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws" probably is one in which an enterprise seeking customers outside its home state is sued in the state of its customer. There is no obvious reason, however, why this criterion should not apply against either party. *See, e.g., State ex rel White Lbr v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968), *compare Neptune Microfloc v. First Fla Util.,* 261 Or 494, 495 P2d 263 (1972). If a substantial enterprise in the ordinary course of business seeks out an out-of-state lender for the best available terms, that enterprise appears to have purposefully taken advantage of the opportunity of the other state's market as much as if it found a customer and made a sale in that state.

Jones, in the present case, was financing acquisition of a piece of business equipment for his insurance business in Idaho, and at the supplier's initiative he obtained the financing from Colonial Leasing Company, the Oregon plaintiff in the challenged action. For Jones this was a one-time, indirect, largely unplanned transaction. If it falls short of the constitutional criteria for Oregon jurisdiction, it must be because, as the Court observes, it resembles a consumer decision to avail himself of a service offered him by an out-of-state enterprise more than a systematic business decision by Jones's company to seek financing in the Oregon financial market. These may

be uncertain characterizations, but that seems to be the most that the present due process criteria offers.

The result of these indeterminate criteria is seen in the Court's statement that the "reasonableness of exercising jurisdiction over non-residents is a case-by-case question." 296 Or at 740. That does not strike me as a satisfactory rule, or nonrule, for a threshold legal issue like jurisdiction. I still believe, as I suggested in *State ex rel Academy Press v. Beckett, supra,* that if fairness to particular litigants in the circumstances of a particular case is to be the test, rather than jurisdiction over recurring types of cases or factual patterns, such ad hoc determinations can be better handled under procedures suitable to a nonconstitutional rule of *forum non conveniens* than under the guise of federal constitutional law. *See State ex rel Academy Press v. Beckett, supra,* 282 Or at 721-723.