Argued and submitted January 25, resubmitted In Banc December 8, 1993, affirmed April 20, petition for review allowed August 9, 1994 (319 Or 572)

# STATE OF OREGON,
*Appellant,*

*v.*

# FREDERICK WILLIAM COOKMAN,
*Respondent.*

## (91-1524; CA A73459)

873 P2d 335

Harrison Latto, Assistant Attorney General, argued the cause for appellant. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Richard Lee Barton, argued the cause for respondent. With him on the brief was Barton & Loennig.

ROSSMAN, J.

Leeson, J., concurring.

De Muniz, J., dissenting.

## ROSSMAN, J.

The state appeals from an order allowing defendant's demurrer to an indictment that charged him with using a child in a display of sexually explicit conduct, dealing in depictions of sexual conduct involving a child and sexual abuse in the first degree. ORS 163.670; ORS 163.673; ORS 163.425.[1] The demurrer was based on the state's failure to bring those charges within the applicable statute of limitations. We affirm.

The pertinent facts are not in dispute. The indictment charged that defendant committed the crimes between June 1, 1986, and September 1, 1986. In 1986, the limitations period for those crimes was three years. ORS 131.125(2). Accordingly, the period expired on September 1, 1989, at the latest. In 1991, however, the legislature amended ORS 131.125(2) to extend the limitations period to six years. Or Laws 1991, ch 388, § 1.[2] The legislature expressly declared that it intended the six-year limitation to apply to crimes committed before the effective date of the amendment:

> "The amendments to ORS 131.125 by section 1 of this Act apply to all causes of action whether arising before, on or after the effective date of this Act, *and shall revive any cause of action barred by ORS 131.125 (1989 Edition) if the action is commenced within the time allowed by ORS 131.125 as amended by section 1 of this Act*." Or Laws 1991, ch 388, § 2. (Emphasis supplied.)

The amendment became effective on September 29, 1991, more than two years after the three-year limitation period in this case had expired. The state filed the indictment on October 3, 1991.

---

[1] Before certain amendments in 1991, the crime of sexual abuse in the first degree was a Class C felony. ORS 163.425 (1989). In 1991, ORS 163.425 was amended so that it now defines the crime of sexual abuse in the second degree. ORS 163.427 was enacted to define sexual abuse in the first degree, which is now a Class B felony. Or Laws 1991, ch 830, §§ 2, 3.

[2] ORS 131.125(2) was also amended in 1989 to extend the limitations period for the crimes enumerated in that subsection. Those amendments, however, were held not to apply to crimes committed before the effective date of the amendments. *State v. Tyler*, 108 Or App 378, 815 P2d 1289 (1991). The 1989 amendments are not at issue here.

Defendant demurred to the indictment, arguing that retroactive application of a statute of limitations to revive a previously time-barred criminal prosecution violates both the federal and state constitutional protections against *ex post facto* legislation and the Due Process Clause of the Fourteenth Amendment.[3] The trial court found for defendant under the *ex post facto* clauses. The state disagrees with that holding, and argues on appeal that the state and federal *ex post facto* prohibitions are to be construed similarly and that neither one confers upon defendant a constitutional right to be free from criminal prosecution under these circumstances. However, it is not necessary to decide those issues, because, in our view, revival of a lapsed prosecution is so extremely unfair that it transgresses the recognized due process principle of "fundamental fairness."

■     The dissent erroneously concludes that the question of fundamental fairness was not properly preserved below or presented on appeal. The Supreme Court has said:

"We have previously drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. The first ordinarily is essential, the second less so, the third least." *State v. Hitz*, 307 Or 183, 189, 766 P2d 373 (1988). (Emphasis in original.)

Here, the parties raised the *issue* of whether it is unconstitutional for the state to resurrect a previously time-barred prosecution and identified the federal Due Process Clause as the *source* for the position that it is. The record discloses that, during oral argument, the issue of fairness was brought before the court by both the state and defendant. The state admitted that "there is an argument that due process of law applies here" and that "it could be fundamentally unfair to [revive a prosecution] once the statute of limitations has died." The state also encouraged the court to consider that question so that its decision in this matter would be "based on a complete constitutional background." Additionally, defendant offered to submit a supplemental brief addressing the fairness question to aid the court in its decision and to ensure

---

[3] Oregon does not have a due process clause in its state constitution. *See State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 156, 854 P2d 461 (1993); *State ex rel Jones v. Crookham*, 296 Or 735, 740, 681 P2d 103 (1984).

that the issue was "before the Appellate Court." The court indicated that the issue was preserved for the record and that it would direct more briefing on the question if the *ex post facto* issue was not dispositive. Because the court ruled in favor of defendant on *ex post facto* grounds, no supplemental briefs were submitted. However, the court had been given the opportunity to consider the fundamental fairness issue. Under these circumstances, that issue was properly raised below and preserved for review.

Moreover, contrary to the dissent's assertion, defendant has properly advanced this issue on appeal. In the summary of his argument, he avers that " 'reviving' a lapsed prosecution violates the due process clause of the Fourteenth Amendment [to] the United States Constitution." In the final section of his brief, entitled " 'Revival' of a Lapsed Prosecution Violates the Due Process Clause," defendant argues that the practice of extending an expired limitation period to revive a previously time-barred prosecution is "fundamentally unfair" under the Due Process Clause. Having established that the due process issue is properly before us, we turn to its merits.

In *Dowling v. United States*, 493 US 342, 110 S Ct 668, 107 L Ed 2d 708 (1990), the United States Supreme Court identified a category of infractions that violate the "fundamental fairness" component of the Due Process Clause. Quoting *United States v. Lovasco*, 431 US 783, 790, 97 S Ct 2044, 52 L Ed 2d 752 (1977), the Court noted that the action complained of—here, revival of a lapsed prosecution—will be considered fundamentally unfair if it

> "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community sense of fair play and decency.' " 493 US at 353. (Citations omitted.)

Here, the state has deviated from "fundamental conceptions of justice" and elementary standards of "fair play and decency" by attempting to retroactively apply ORS 131.125(2), as amended, to defendant. In *People ex rel Reibman v. Warden*, 242 AD 282, 285, 275 NYS 59, 62 (Sup Ct 1934), the New York Supreme Court made the following observations about the nature and purpose of criminal statutes of limitation:

"In the absence of statutes of limitations specially applicable to criminal cases, a prosecution may be instituted at any time, however long after the commission of the criminal act. An act of limitation is an act of grace in criminal prosecutions. The state makes no contract with criminals at the time of the passage of the act of limitation that they shall have immunity from punishment if not prosecuted within the statutory period. Such enactments are measures of public policy only. They are entirely subject to the will of the legislature, and may be changed or repealed altogether in any case *where a right to acquittal has not been absolutely acquired by the completion of the period of limitation.* A statute of limitations in criminal cases therefore differs from one applicable to civil actions, for while the latter bars the remedy only and not the cause of action, *a statute limiting criminal prosecutions destroys the right of action as well as the remedy.* In other words, statutes of limitation in criminal cases differ from those in civil cases in that in civil cases they are statutes of repose while *in criminal cases they create a bar to the prosecution."* (Emphasis supplied; citations omitted.)

We echoed those sentiments in *State v. Dufort*, 111 Or App 515, 519, 827 P2d 192 (1992), where, in quoting the Washington Supreme Court, we said:

" '[S]tatutes of limitation are matters of legislative grace; they are a surrendering by the sovereign of its right to prosecute. Since they are measures of public policy only, and subject to the will of the Legislature as such, they may be changed or repealed *in any case where the right to a dismissal has not been absolutely acquired by the completion of the running of the statutory period of limitation.'* State v. Hodgson,* 108 Wash 2d 662, 667, 740 P2d 848 (1987)." (Emphasis supplied.)

As the *Hodgson* court recognized,

" '[u]ntil the statute has run it is a mere regulation of the remedy * * * subject to legislative control. *Afterwards it is a defense, not of grace, but of right, not contingent, but absolute and vested, * * * not to be taken away by legislative enactment.' "* 108 Wash 2d at 668, *quoting People ex. rel. Reibman v. Warden, supra,* 242 AD at 285. (Emphasis supplied.)

The notion that a "perfected" or "complete" statute of limitations defense cannot be abrogated or dispensed with by subsequent legislative action is by no means foreign to this court. In *State v. Tyler,* 108 Or App 378, 815 P2d 1289 (1991),

we were asked to decide whether the legislature intended the 1989 extension of the limitation periods in ORS 131.125(2) to apply retrospectively. In *Tyler*, as here, the former limitation period on the defendant's crimes had expired before the extensions became effective. We reasoned that the legislature did not intend the extensions to apply retroactively because the law was silent as to its retroactivity and because

"[a]pplying the extended limitation period to the crimes alleged here *would impair defendant's right to be free from prosecution that had already inured by expiration of the period in the old statute.*" 108 Or App at 381. (Emphasis supplied.)

In *State v. Dufort, supra*, we characterized *Tyler* as holding "that an extended limitation period did not apply to a criminal prosecution where the shorter period had expired before the longer period was enacted." 111 Or App at 519 n 3. We noted the distinct difference between extending an existing limitation period and extending a lapsed limitation period so as to resurrect a case that has not been prosecuted:

" 'Certainly it is one thing to revive a prosecution already dead and another to give it a longer lease of life. The question turns on how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it.' " 111 Or App at 520 n 3, *quoting Falter v. United States*, 23 F2d 420, 425 (2d Cir.), *cert den* 277 US 590 (1928).

It is settled tradition that the state cannot, consistent with the longstanding due process demands of fundamental fairness, enact a law that extends a statute of limitations so as to resurrect a criminal case in which the statutory period has already run. Accordingly, we conclude that, as applied to defendant, ORS 131.125(2), as amended by Oregon Laws 1991, chapter 388, section 2, violates the Due Process Clause. Insofar as that statute purports to revive criminal prosecutions that were previously time-barred, we hold that it is invalid and that the limitations period applicable to defendant is the three-year period that was in effect at the time the crimes were allegedly committed. Under that

statute of limitations, the state is barred from commencing a criminal prosecution against defendant.

In short, we cannot accept the proposition that the state has the supernatural power to exhume and revitalize a prosecution that is dead and buried.

Affirmed.

**LEESON, J.,** concurring.

The lead opinion is probably correct that ORS 131.125(2), as applied to revive defendant's previously time-barred prosecution, violates due process. However, I do not reach that question, because the trial court's judgment can and should be affirmed on state constitutional grounds. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983).

It is well established that Oregon courts have independent responsibility to construe the Oregon Constitution, and that the decision whether to follow federal precedents must be made on a case-by-case basis. *See, e.g., State v. Caraher*, 293 Or 741, 748, 643 P2d 942 (1982). The *ex post facto* clause of the Oregon Constitution traditionally has been construed similarly to the parallel provision of the federal constitution. *See, e.g., State v. Gallant*, 307 Or 152, 155, 764 P2d 920 (1988). However, the practice of construing the *ex post facto* clause of our constitution in accordance with prevailing federal precedents was not an abdication of the responsibility of independent construction. Rather, it reflected a determination that those federal precedents comported with Oregon judicial interpretation of the *ex post facto* prohibition of our state constitution.

In *Beazell v. Ohio*, 269 US 167, 169-71, 46 S Ct 68, 70 L Ed 216 (1925), Justice Stone summarized the federal *ex post facto* prohibition, as it was then understood:

> "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to the law at the time when the act was committed, is prohibited as *ex post facto*.
>
> "* * * * *

"Expressions are to be found in earlier judicial opinions to the effect that the constitutional limitation may be transgressed by alterations in the rules of evidence or procedure. See *Calder v. Bull*, [3 US 386, 1 L Ed 648 (1798)]; *Cummings v. Missouri*, [71 US 277, 18 L Ed 356 (1867)]; *Kring v. Missouri*, [107 US 221, 2 S Ct 443, 27 L Ed 506 (1883)]. And there may be procedural changes which operate to deny to the accused a defense available under the laws in force at the time of the commission of his offense, or which otherwise affect him in such a harsh and arbitrary manner as to fall within the constitutional prohibition. *Kring v. Missouri*, [*supra*]; *Thompson v. Utah*, [170 US 343, 18 S Ct 620, 42 L Ed 1061 (1898)]. * * *

"Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree."

The court held that the law at issue in that case did not make criminal an act that was innocent when done or increase the quantum of punishment to which the accused was exposed. The law, therefore, was "procedural." The court went on to hold that that alteration of procedure was not of sufficient moment to implicate *ex post facto* concerns.[1]

Shortly after *Beazell*, in *Falter v. United States*, 23 F2d 420, 425-26 (2d Cir), *cert den* 277 US 590 (1928), Judge Learned Hand said:

"[*Beazell v. Ohio, supra*] laid it down generally that the question [of whether a law violated the *ex post facto* prohibition] was one of degree and depended upon whether the result was 'harsh and oppressive.' Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it."

---

[1] It is critical to the dissent's position that it ignores, even denies the existence of, the latter holding in *Beazell*. The dissent's selective quotation from *Beazell* is significant. The quotation ends exactly where the discussion of procedural violations of the *ex post facto* clause begins.

In *State v. Dufort,* 111 Or App 515, 827 P2d 192 (1992), we quoted from that passage with approval. The distinction drawn by Judge Hand, between revival of an extinct prosecution and extension of a viable one, appears to have been uniformly followed by federal and state courts. *Compare State v. Dufort, supra, with State v. Tyler,* 108 Or App 378, 815 P2d 1289 (1991). It also follows from *Beazell's* acknowledgement that "procedural changes which operate to deny to the accused a defense available under the laws in force at the time of the commission of his offense * * * fall within the constitutional prohibition." 269 US at 170.

The *Beazell* formulation of the federal *ex post facto* prohibition remained authoritative for 65 years. It was during that period that Oregon courts concluded that the *ex post facto* clause of the Oregon Constitution had a similar meaning. *See, e.g., State v. Gallant, supra.*

In 1990, in *Collins v. Youngblood,* 497 US 37, 110 S Ct 2715, 111 L Ed 2d 30 (1990), the United States Supreme Court overruled *Kring v. Missouri,* 107 US 221, 2 S Ct 443, 27 L Ed 506 (1883), and *Thompson v. Utah,* 170 US 343, 18 S Ct 620, 42 L Ed 1061 (1898) (to the extent that it relied on the *ex post facto* clause). The *Collins* Court held that procedural changes in the law may always be applied retrospectively without violating the federal *ex post facto* clause. In essence, *Collins* amputated the procedural arm of *Beazell.*[2]

Although the federal *ex post facto* clause is now construed differently under *Collins,* Oregon courts must still undertake an independent construction of the Oregon Constitution. This case squarely presents the question, for the first time, whether to follow *Collins* in its departure from precedent.[3]

---

[2] Ironically, the Court in *Collins* purported to approve of, and rely on, *Beazell.*

[3] In *Dawson v. Board of Parole,* 123 Or App 619, 622, 861 P2d 878 (1993), we expressly deferred the question whether to follow *Collins,* noting that the result would be the same whether we followed it or not. Similarly, in *State v. Wille,* 317 Or 487, 858 P2d 128 (1993), and *State v. Langley,* 318 Or 28, 861 P2d 1012 (1993), it was not necessary to decide whether to follow *Collins,* because the defendant showed an *ex post facto* violation even under the limited *Collins* formulation. 317 Or at 502-05. *State v. Dufort, supra,* also presented a situation in which the result was the same whether we applied the *Collins,* or the established *Beazell,* formulation.

The cases construing the Oregon Constitution consistently with the pre-*Collins* construction of the federal constitution remain good law until they are overruled. Because that construction is sound, I would adhere to it. The *Beazell* formulation should remain the controlling interpretation of the Oregon Constitution, notwithstanding *Collins*.

Procedural alterations in the law that implicate *ex post facto* concerns may well be few and far between. However, ORS 131.125(2), as applied to defendant in this case, deprives him of a vested and complete procedural defense. As such, it violates the *ex post facto* prohibition of the Oregon Constitution. *Beazell v. Ohio, supra.* The trial court properly allowed defendant's demurrer to the indictment.

Warren and Haselton, JJ., join in this concurring opinion.

**De MUNIZ, J.,** dissenting.

I dissent. Until the majority's opinion, the issue in this case had been whether the 1991 amendment to ORS 131.125(2) violated constitutional *ex post facto* prohibitions. Instead of addressing that issue, the majority finds that a due process issue has been preserved and holds that the retroactive application of the statute of limitations here violates "fundamental fairness." I cannot agree that that issue has been preserved in a posture capable of appellate review.

Far from raising a due process argument, defendant's sole constitutional challenge in his demurrer to the indictment was that the legislative act that purported to revive an expired statute of limitations is invalid as an *ex post facto* law.[1] He did not mention due process in his memorandum in support of the demurrer. It was the state, during the hearing on defendant's demurrer, that first raised the possibility of a due process argument. Defendant's co-counsel then expressed a willingness to brief the issue if the court wished, but stated:

"[E]ssentially what [the United States Supreme Court] has done is no longer considering *ex post facto* arguments that are

---

[1] Defendant also demurred on the ground that the crimes alleged were barred by a previous plea negotiation.

dressed up in a due process argument. That is expressly what they're not doing now.

"\* \* \* \* \*

"If the Court prefers, we would be willing to address the fundamental fairness due process issue at a State level. We didn't think it was necessary with the authorities that we found. And we believe that, [co-counsel] and I believe because of the way Rehnquist and how courts now are dealing with fundamental fairness, that that's a dead issue. That there is no longer a fundamental fairness approach that the 9th Circuit, if this case would ever go there, would ever pay any attention to or that the Supreme Court would grant cert on. If we were to win on that basis and the State appeals, I think we would lose."

In its brief, the state addresses the due process issue only in a footnote, stating that "defendant's attorney did allude to a 'fundamental fairness due process' claim, but apparently decided not to pursue it \* \* \*."[2] In his answering brief, defendant "rejects the state's assertion that he waived arguments based on the due process clause \* \* \*," but he does not rely on a due process argument to uphold the trial court's decision. Rather, he states that, "if the ruling of the trial court is reversed, [he] will raise the [due process] issue on remand with other issues on which the trial court withheld its ruling."

The majority finds that "defendant has properly advanced this issue on appeal," 127 Or App at 287, on the basis of his one-page "outline" of an argument "[i]n the event this court chooses to deal with the due process issue." The majority then concludes that, on the above record, the "issue" of fundamental fairness was preserved, reciting the rubric from *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988). However, in recent discussions, the Supreme Court has made it clear that the role of an appellate court is review, which incorporates the underlying principle that "an appellate court ordinarily considers an issue \* \* \* through competing argument of adversary parties with an opportunity to submit both written and oral arguments to the court." *Ailes v. Portland Meadows, Inc*, 312 Or 376, 382, 823 P2d 956 (1991).

---

[2] The state's understanding that defendant waived a due process argument is not unreasonable, given defendant's position in the trial court.

On this record there has been nothing approaching a meaningful written or oral argument on the issue of due process.

However, if the majority elects to address a due process issue not properly before us, its focus in resolving the question is the opposite of what the Supreme Court has cautioned must be the approach. In the field of criminal law, the category of infractions that violate "fundamental fairness" is very narrow, based on the recognition that the Due Process Clause has limited operation beyond the specific guarantees set out in the Bill of Rights. *Dowling v. United States*, 493 US 342, 352, 110 S Ct 668, 107 L Ed 2d 708 (1990). Not only has the Supreme Court shown little inclination to use the Due Process Clause to interfere with a state's ability to regulate criminal procedure, *see Spencer v. Texas*, 385 US 554, 564, 87 S Ct 648, 17 L Ed 2d 606 (1967), any such challenge invokes a complex analysis.

In *Medina v. California*, ____ US ____, 112 S Ct 2572, 120 L ED 2d 353 (1992), the Supreme Court set out the analytical framework for assessing the validity of state criminal procedures under the Due Process Clause. Under that analysis, the first inquiry is whether there is a historical basis for concluding that the state procedure violates due process. The historical analysis made by the Court in *Medina* demonstrated reliance on precedent from the 17th, 18th and 19th centuries. If there is no historical basis from which to conclude that there is a due process violation, the next inquiry is whether the challenged "procedure transgresses any recognized principle of 'fundamental fairness' in operation." ____ US at ____, 112 S Ct at 2578. That inquiry is specific to the state's procedure and the protections accorded to the defendant.

I am not convinced by the majority's "historical" analysis, which quotes from a 1934 New York case and from a 1992 Washington case, which, in turn, quotes the New York case. The majority also provides no analysis of how the change in the statute of limitations is fundamentally unfair "in operation."[3] The majority's holding is grounded only on

---

[3] That inquiry here would require an analysis of the nature of the defenses available to defendant, as in an *ex post facto* analysis as discussed *infra*. Thus, the issue would become an "*ex post facto* argument dressed up in a due process argument," as defendant's counsel recognized in the trial court.

its perception that changing the time in which a defendant must answer for an alleged criminal act is just not "fair." That is an insufficient basis on which to declare a statute unconstitutional.

We err in deciding the constitutionality of a statute on a ground that has not been thoroughly argued and briefed. On the record before us, we are not usually so quick to find that a constitutional issue has been preserved, and I can conclude that the majority does so here only because it cannot accept that the amended statute presents no *ex post facto* violation.

I turn to the issue properly before us. Questions that implicate the *ex post facto* provisions of the federal and state constitutions are analyzed similarly. *See State v. Wille,* 317 Or 487, 502, 858 P2d 128 (1993); *State v. Perez,* 119 Or App 436, 439, 851 P2d 617 (1993); *State v. Dufort,* 111 Or App 515, 520, 827 P2d 192 (1992). The *ex post facto* clauses prohibit the legislature from enacting a law that (1) punishes an act that was legal when it occurred; (2) increases, after commission of the crime, the punishment for that crime; or (3) deprives the perpetrator of a defense that existed when the crime was committed. *Collins v. Youngblood,* 497 US 37, 42, 110 S Ct 2715, 111 L Ed 2d 30 (1990); *State v. Wille, supra,* 317 Or at 502; *State v. Dufort, supra,* 111 Or App at 520.

The third category of *ex post facto* laws is really a variation of the first two. The United States Supreme Court has made it clear that, properly construed, the term "defense" should be "linked to the prohibition on alterations in 'the legal definition of the offense' or 'the nature or amount of the punishment imposed for its commission.' " *Collins v. Youngblood, supra,* 497 US at 50 (quoting *Beazell v. Ohio,* 269 US 167, 169-70, 46 S Ct 68, 70 L Ed 216 (1925)). A change in the limitation period for the prosecution of a criminal act is not linked to the elements of the defense or the punishment of the crime. It does not change any affirmative defense or excuse that would make the act not a criminal offense as to defendant.[4] Because a change in the limitation period does

---

[4] It is pure legal fiction to assert that changing a statute of limitations changes the definition of a criminal act. That there was a period of time following the

not reach those categories, the expiration of the limitation period in effect when defendant committed the act conferred no constitutional right on defendant, under the *ex post facto* clauses of either constitution, to be free from criminal prosecution.

Judge Leeson argues that procedural defense was a basis of *Beazell v. Ohio, supra,* and was the jurisprudence adopted by Oregon courts. She concludes, therefore, that, because *"Collins* amputated the procedural arm of *Beazell,"* 127 Or App at 292, we should reject *Collins* and adhere to the *Beazell* formulation.

That understanding of *Beazell* and the conclusion that *Collins* radically departed from earlier *ex post facto* jurisprudence is not correct. In *Beazell,* the defendants appealed from application of an Ohio statute that was amended after the date of their offense but before the defendants were jointly indicted. The original statute provided that jointly indicted defendants had the right to be tried separately. The amendment made separate trials a matter of discretion with the trial court. The Court rejected the defendants' argument that applying the amended statute to them violated the *ex post facto* prohibition:

> "The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

> "But the statute of Ohio here drawn in question affects only the manner in which the trial of those jointly accused shall be conducted. It does not deprive the [defendants] of any defense previously available, nor affect the criminal quality of the act charged. Nor does it change the legal definition of the offense or the punishment to be meted out. *The quantum and kind of proof required to establish guilt, and all questions which may be considered by the court and*

expiration of the limitation period in which defendant's prosecution was time-barred has nothing to do with the fact that the act that he allegedly committed in 1986 was punishable as a crime at that time.

*jury in determining guilt or innocence, remain the same."*
*Beazell v. Ohio, supra,* 269 US at 170. (Emphasis supplied.)

Judge Leeson does not cite that holding, relying instead on dicta in which the court noted the "procedural" discussion in *Kring v. Missouri,* 107 US 221, 2 S Ct 443, 27 L Ed 507 (1883), and *Thompson v. Utah,* 170 US 343, 18 S Ct 620, 42 L Ed 1061 (1898). She does not address the Court's conclusion of its discussion that[5]

"the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation * * * and *not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." Beazell v. Ohio, supra,* 269 US at 171. (Emphasis supplied.)

A Statute of Limitations defense does not affect a matter of substance. It is not a defense that goes to the quantum of proof or to a question related to guilt or innocence. It is, rather, a defense that *avoids* those considerations.

Contrary to Judge Leeson's understanding, *Collins* did not abrogate the *ex post facto* jurisprudence of *Beazell.* In overruling *Kring v. Missouri, supra,* and *Thompson v. Utah, supra,* (to the extent that *Thompson* rested on the *Ex Post Facto* Clause) the *Collins* Court did not view its analysis as a "radical departure." As the Court noted, the reasoning of those cases had not been relied on since 1898, and the historical basis of the clause demonstrated that

"the word 'procedural,' * * * refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes." *Collins v. Youngblood, supra,* 497 US at 45.

That understanding of *ex post facto* jurisprudence is the same as noted by the *Beazell* court. The reach of the *ex post facto* provision was narrow when *Beazell* was decided and remains narrow under *Collins.* That narrow interpretation has been implicitly or explicitly adopted by the Oregon Supreme Court and this court. *See State v. Wille, supra; State*

---

[5] Examples of "procedural" changes that the Court did not find to violate *ex post facto* prohibitions included a statute that enlarged the class of persons who could be witnesses at trial and changes in the rules of evidence after indictment. *Beazell v. Ohio, supra,* 269 US at 171.

*v. Dufort, supra.*[6] The change in the Statute of Limitations that defendant challenges here does not come within the traditional reach of the *ex post facto* clauses.

Determining a limitation period for the prosecution of a crime rests with the legislature. *State v. Dufort, supra,* 111 Or App at 519. Nothing prohibits the legislature from changing the time period in which to prosecute those who commit sex crimes against children. Defendant allegedly committed his crimes within six years of the indictment returned against him. I would decide this case as the parties here argued it, hold that the *ex post facto* provisions do not bar defendant's prosecution and reverse and remand.

Richardson, C. J., and Deits and Edmonds, JJ., join in this dissent.

---

[6] In *State v. Wille, supra,* 317 Or 502, the Supreme Court reiterated that the state and federal *ex post facto* clauses are to be construed "without distinguishing them." Further, both we and the Supreme Court have, on at least one occasion, relied almost exclusively on the United States Supreme Court's *Collins* analysis. In *State v. Wille, supra,* the Oregon Supreme Court held that retroactive application of certain amendments adding a new penalty for aggravated murder violated the state and federal prohibitions against *ex post facto* legislation, because the amendments made " 'more burdensome the punishment for a crime, after its commission.' " 317 Or at 503, (*quoting Collins v. Youngblood, supra,* 497 US at 42). In *State v. Dufort, supra,* 111 Or App 520, we quoted the definition of "defense" set out in *Collins* and held that the extension of an unexpired limitation period does not deprive the defendant of a "defense" within the meaning of the *ex post facto* clauses. 111 Or App at 521.