Argued and submitted January 29, appeal in A91058 dismissed as moot; in A93454, sentence vacated and remanded for resentencing; otherwise affirmed April 21, 1999

STATE OF OREGON,
*Appellant,*

*v.*

KARL DAVID BOWMAN, JR.,
*Respondent.*

(95-05-33541; CA A91058 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

KARL DAVID BOWMAN, JR.,
*Respondent.*

(CA A93454)
(Cases Consolidated)

980 P2d 164

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia Linder, Solicitor General.

Steven J. Sherlag argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

The state appeals from judgments imposing sentences on two felony convictions. Defendant was charged with two counts of first-degree robbery based on crimes committed against two victims on or about May 13, 1995. He was convicted of two counts · of second-degree robbery. ORS 164.405(1)(a). At the time of sentencing, the trial court refused to impose the 70-month minimum sentences mandated by Measure 11, which was codified as ORS 137.700(2)(r) (1995).[1] The trial court ruled that the statutes were unconstitutional as applied to defendant under Article I, section 16, of the Oregon Constitution. Instead, the court imposed probationary sentences and entered a final judgment on November 16, 1995. Both parties appealed in December 1995 from that judgment.

On May 8, 1996, defendant stipulated to being in violation of his probation, and, thereafter, the trial court revoked the probationary sentences. At sentencing on May 16, 1996, the court again refused to impose the 70-month minimum sentences prescribed by ORS 137.700(2)(r) (1995) and instead imposed six-month sentences under the sentencing guidelines. The state appeals from the resulting judgment that was entered on May 21, 1996.[2] We dismiss the appeal from the November 16, 1995, judgment as moot, and vacate the sentences imposed in the May 21, 1996, judgment, and remand for resentencing.

In arriving at its guilty verdicts, the jury could have found the following facts. David Bowers and Eric Frey were in Portland to undergo physical examinations for admission

---

[1] ORS 137.700(2)(r) (1995) is a codification of Ballot Measure 11, which was approved by the voters in the November 1994 general election. Ballot Measure 11 was codified as amended by the 1995 Legislative Assembly. *See* Or Laws 1995, ch 2, § 1; Or Laws 1995, ch 421, §§ 1 and 4; Or Laws 1995, ch 422, §§ 47-49. Ballot Measure 11 took effect on April 1, 1995. The statutory amendments reflected in ORS 137.700 did not take effect until June 30, 1995. Defendant committed the crimes in May 1995, after Measure 11 took effect but before the amendments took effect. Therefore, his convictions are governed by Measure 11 as originally enacted. However, none of the issues raised by this appeal is affected by the 1995 amendments, and, therefore, for purposes of this opinion, we will refer to ORS 137.700(2)(r) (1995) as the governing statute.

[2] Defendant abandoned his cross-appeal from the November 16, 1995, judgment. The state's appeals from the November 16, 1995, and May 21, 1996, judgments have been consolidated by this court for purposes of argument.

into the army. They stayed at the Red Lion Inn near the Steel Bridge in Portland. On the evening in question, Bowers and Frey walked from the hotel to downtown Portland, visited some nightclubs, then walked back across the bridge at about 11:45 p.m. toward the Red Lion. As they were almost across the bridge, they were accosted by defendant and two other men. Defendant asked Bowers and Frey for money and drugs and then robbed them by displaying knives when they declined his request. After being robbed, Bowers and Frey reported the robbery to a security guard and then to the police. When defendant was arrested, Bowers and Frey identified him as the robber. When interviewed by the police, defendant admitted that he had asked Bowers and Frey for money, that he had displayed two knives and that they had complied with his request by handing over their money and cigarettes.

Defendant testified at trial that he was 18 years old and had been living under a Portland bridge. He said that, at the time of the incident, he was listening to music over headphones and did not hear what had been said between his companions and Bowers and Frey. He assumed that Bowers and Frey were friends of his companions and that Bowers and Frey were paying off a prior debt by handing over their money and cigarettes. He also denied making the admissions to police that have been previously described.

Before sentencing, defendant filed a sentencing memorandum in which he raised several constitutional challenges to ORS 137.700(2)(r) (1995).[3] The trial court ruled that, as applied to defendant, the mandatory minimum sentences required by ORS 137.700(2)(r) (1995) violated defendant's constitutional rights under Article I, section 16, of the Oregon Constitution.[4] At the time that the initial sentences were imposed, the trial court explained,

---

[3] ORS 137.700(1) (1995) provided that:

"When a person is convicted of one of the offenses listed in subsection (2) of this section and the offense was committed on or after April 1, 1995, the court shall impose, and the person shall serve, at least the entire term of imprisonment listed in subsection (2) of this section."

Subsection (2)(r) established a 70-month sentence for robbery in the second degree.

[4] Article I, section 16, of the Oregon Constitution, provides, in pertinent part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

"I am satisfied that under the facts of this case, the sentence required by Ballot Measure 11 violates both Article I, section 16, and Article I, section 15, of the Oregon Constitution, in that it is too disproportional to offenses that although there is not, we don't have sort of identical or have very closely related offenses, the court, the Oregon Supreme Court analyzed in other cases considering other offenses that were not swept up in Ballot Measure 11 that appear to this court to involve similar or more severe violations against persons and public safety that have lesser sentences than this makes this sentence and the facts of this case disproportionate.

"I am persuaded and I think the state is correct in its argument that it was fortuitous circumstance that the victims had so little property on them or at least in their pockets, a few dollars I believe the testimony was would have been or could have been had but that [defendant] should not necessarily benefit from that peculiarity of circumstance.

"But still given his age, crime-free background, the fact that the harm of loss was less [than] typical, and I say that not focusing on the property obtained but on the degree of the threatened use of force keeping in mind we are talking here about knives strapped to these homemade leather things to the defendant's arms. However, I think that the * * * more persuasive evidence in trial was these things were strapped to the outside of his arms and were not concealed.

"Anyway, the sentence would be disproportionate and also under the facts of this case given the defendant's history, his background, his age, the benefit he has obtained while he has been in jail, I think the sentence required by Ballot Measure 11 would * * * serve no purpose of reformation.

"* * * * *

"* * * But I believe that not only * * * a vindictive justice sentence required by Ballot Measure 11 under the circumstances of this case but public safety would not be for reformation of [defendant]. In fact, I think public safety would be greatly diminished by subjecting him at this stage in his life given his background, given what he has been through, and going through to spending the next 70 months of his life in

prison. Therefore, I find Ballot Measure 11 unconstitutional as applied in this case."

At the subsequent hearing regarding the sentencing for the probation violation, the prosecutor again recommended that the court impose the 70-month sentences mandated by the statute. The court rejected her argument:

"I believe that I don't have discretion to impose the sentence called for by Ballot Measure 11 at this time, for a couple of reasons. One is that—my determination that it would be unconstitutional to apply the Ballot Measure 11 sentence was a result of my analysis of the facts and circumstances of the case and of the defendant at the time of sentencing.

"I don't think that I can consider subsequent conduct, that it would be appropriate to do so in hindsight, or saying if I knew then what I know now, or what has happened since, then I might have reached a different conclusion. I don't think I'm allowed to do that at sentencing.

"* * * * *

"And I think there are additional complications in terms of my revisiting those issues while the case is on appeal in the jurisdiction of the appellant court. I want to make it clear that I am not exercising my discretion with respect to something other than what is available under the guidelines.

"I believe I don't have any discretion to exercise.

"I think that then that I am left with the options available under the sentencing guidelines which I found applicable when I entered judgment and sentence of [defendant] last November and I found that the guidelines applied gridblock 6-I for each of these counts."

The trial court then imposed concurrent six-month sentences on the two convictions pursuant to the sentencing guidelines.[5]

On appeal, the state argues that the trial court erred by refusing to impose the 70-month minimum sentences

---

[5] OAR 253-10-002(1) (1993) provided:

"For those offenders whose presumptive sentence was probation, the sentence upon revocation shall be a prison term up to a maximum of six months."

mandated by ORS 137.700(2)(r) (1995). To begin with, we hold that the state's appeal of the probationary sentences is moot. Because those sentences are no longer in existence, any decision as to their legality can have no practical effect. *See State v. Lewis*, 121 Or App 494, 854 P2d 1009, *rev den* 318 Or 26 (1993) (holding that the defendant's appeal of special conditions of his probation was moot because his probation had been revoked and was no longer in effect).

The next issue is whether the state's assignment of error on appeal from the May 21, 1996, judgment is reviewable. The state filed its notice of appeal in June 1996. The version of ORS 138.222 that became effective on October 4, 1997,[6] provides, in pertinent part:

"(1)  * * * a sentence imposed for a judgment of conviction entered for a felony committed on or after November 1, 1989, may be reviewed only as provided by this section.

"(2)  Except as otherwise provided in subsection (4)(c) of this section, on appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court shall not review:

"(a)  Any sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission.

"* * * * *

"(e)  Except as authorized in subsections (3) and (4) of this section, any other issue related to sentencing.

"* * * * *

"(4)  In any appeal, the appellate court may review a claim that:

"(a)  The sentencing court failed to comply with requirements of law in imposing or failing to impose a sentence;

"* * * * *

"(c)  The sentencing court erred in failing to impose a minimum sentence that is prescribed by ORS 137.700 or 137.707.

---

[6] Or Laws 1997, ch 852, § 9.

"* * * * *

"(7) Either the state or the defendant may appeal a judgment of conviction based on the sentence for a felony committed on or after November 1, 1989, to the Court of Appeals subject to the limitations of chapter 790, Oregon Laws 1989."

Defendant argues that the state has no right to appeal the sentences because ORS 138.222(2)(a) prohibited an appeal of a presumptive sentence by the state at the time the sentences were imposed. Defendant explains:

"After *State ex rel Huddleston v. Sawyer*, 324 Or 597, 600-08, 932 P2d 1145, *cert denied* ____ US ____, [118 S Ct 557,] 139 L Ed 2d 399 (1997), it became eminently clear that at *all* pertinent times this Court lacked authority to reach the [s]tate's claims of error. * * * The state's sole remedy was mandamus from the original sentencing, and under laches, the state had thirty days to seek mandamus review." (Emphasis in original; footnote omitted.)

Defendant reasons that the retroactive application of ORS 138.222(4)(c) "to revive the state's dead appeal" violates the constitutional separation of powers doctrine as well as *ex post facto* provisions and due process.

In *State v. Jackman*, 155 Or App 358, 963 P2d 170, *rev den* 328 Or 115 (1998), the defendant made similar *ex post facto* and separation of power arguments, which we rejected. We adhere here to our reasoning in that case. *See also State v. Clanton*, 152 Or App 705, 955 P2d 312 (1998). In *State v. Gee*, 158 Or App 597, 976 P2d 80 (1999), we also rejected the defendant's due process arguments.[7] In this case, defendant also argues that the due process clause of the Fourteenth Amendment is violated under the facts of this case because the retroactive application of ORS 138.222(4)(c) would be "fundamentally unfair." He argues that the proverbial goal posts have been moved after the contest is over because the retroactive application of the statute resurrects higher-court review that did not exist at the time that defendant committed the crimes, was tried and sentenced. Defendant argues

---

[7] In *Gee*, the defendant did "not explain why changing which court will first review the alleged sentencing error is 'fundamentally unfair[.]' " 158 Or App at 600.

that the situation is analogous to that in *State v. Cookman*, 127 Or App 283, 873 P2d 335 (1994), *aff'd on other grounds* 324 Or 19, 920 P2d 1086 (1996). In *Cookman*, we held that "the state cannot * * * enact a law that extends a statute of limitations so as to resurrect a criminal case in which the statutory period has already run." 127 Or App at 289. We reasoned that the right to acquittal had been absolutely acquired by the defendant because of the completion of the period of limitations in effect at the time.

In contrast to the situation in *Cookman*, ORS 138.222(4)(c) does not attempt to revive a prosecution that has become barred because of the passage of time. In that instance, the ability to prosecute the crime successfully was lost forever once the statutory period expired. That result is in some ways akin to the loss of jurisdiction. Here, after the notice of appeal was filed, ORS 138.222(4)(c) became effective, which made defendant's sentences reviewable in this court when previously they had not been.[8] In *Jackman*, we distinguished between "appealability" and "reviewability." "Appealability" concerns whether an appeal can be taken from an order or judgment and implicates jurisdictional concerns. "Reviewability" concerns what rulings or issues can be raised on appeal. We pointed out in *Jackman* that ORS 138.222(4)(c) concerns reviewability and not appealability.

The import of that distinction, as applied to this case, is that the sentences imposed by the trial court could have been challenged by the state through a mandamus proceeding before the enactment of section 4(c). In that sense, "review" regarding the sentences existed before and exists after the amendment to the statute and has never been lost. As we said in *Jackman*, "[t]he amended statute merely gave this court the ability to correct an error that otherwise was correctable by a different appellate court." 155 Or App at 364.

---

[8] In *State v. Guyton*, 126 Or App 143, 868 P2d 1335, *rev den* 319 Or 36 (1994), we held that we could not review on direct appeal the defendant's claim that his sentence was excessive. We ruled that, because the defendant's sentence was prescribed by the rule for revocation sanctions and was within the presumptive range of the appropriate grid block, ORS 138.222(2)(a) prohibited review. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den* _____ US _____ , 118 S Ct 557, 139 L Ed 2d 399 (1997), was decided in February 1997. It clarified for the first time that review of a presumptive sentence was not available under ORS 138.222(4)(a). *Huddleston*, 324 Or at 607-08.

In that light, there is nothing fundamentally unfair about applying section 4(c) to defendant's sentences even though they were imposed before the statute became effective, because what was reviewable in a mandamus proceeding is now reviewable on direct appeal. For that reason, we conclude that the retroactive application of ORS 138.222(4)(c) does not violate due process and operates to authorize the state's appeal in this case.

We turn to the issue of whether the 70-month sentences mandated by ORS 137.700(2)(r) (1995) are unconstitutionally disproportionate under Article I, section 16, as applied to defendant. A sentence is unconstitutionally disproportionate to the offense and to a defendant if it "shock[s] the moral sense of all reasonable persons as to what is right and proper." *State v. Isom,* 313 Or 391, 401, 837 P2d 491 (1992) (citing *Cannon v. Gladden,* 203 Or 629, 632, 281 P2d 233 (1955)); *State v. Silverman,* 159 Or App 524, 957 P2d 1186 (1999). In *State v. Shoemaker,* 155 Or App 416, 419, 965 P2d 418, *rev den* 328 Or 41 (1998), we responded to a similar argument by saying:

> "As to defendant's argument that his sentence amounts to cruel and unusual punishment in violation of Article I, section 16, of the Oregon Constitution, we have held previously that a 70-month sentence for second-degree robbery committed with a firearm is not " 'so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper.'" *State v. George,* 146 Or App 449, 456, 934 P2d 474 (1997) (quoting *State v. Isom,* 313 Or 391, 401, 837 P2d 491 (1992)). We find no reason to reach a different conclusion on the facts of this case, which also involves robbery using a deadly weapon."

In *Shoemaker,* a 17-year-old defendant "brandished a knife and demanded that the victim give him his money, ten dollars." 155 Or App at 418. Defendant seeks to distinguish the holding in *Shoemaker* on the ground that it "provides insufficient background regarding the defendant or how the knife was 'brandished' to be instructive." Defendant then argues that because he "has lived conviction-free * * * for his whole life," part of which he has spent as a homeless individual, that because he has benefitted from being in jail while awaiting trial and that because neither victim was in

any way physically injured, the 70-month sentences constitute "cruel and unusual punishment." However, that argument does not present the entire picture of defendant and his conduct. Defendant accosted two young men in the dark on a bridge in the middle of the night, displayed knives and demanded their property. The conduct that defendant engaged in was fraught with the potential for causing fear in the victims and promoting violence.

In sum, the circumstances of this case do not demonstrate an unconstitutional application of the statute under Article I, section 16, of the Oregon Constitution. On remand, the trial court is to impose the mandated sentences under ORS 137.700(2)(r) (1995).

Appeal in A91058 dismissed as moot; in A93454, sentences vacated and remanded for resentencing; otherwise affirmed.