Argued and submitted April 22; taken en banc September 8, 1999, reversed and remanded for resentencing April 19, 2000

## STATE OF OREGON,
*Appellant,*

*v.*

## JUSTIN EDWARD THORP,
*Respondent.*

### (CR97-00753; CA A101900)

2 P3d 903

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

David C. Degner, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Deits, Chief Judge, Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim and Brewer, Judges.

DE MUNIZ, J.

Edmonds, J., concurring.

Brewer, J., concurring.

Haselton, J., dissenting.

**DE MUNIZ, J.**

This is a case about judicial restraint and faithful adherence to our constitutional duty to accord the legislature and the citizens of Oregon substantial deference in fixing the appropriate punishment for criminal behavior. Ultimately, it is the fidelity of the majority of this court to its constitutional duty that controls the outcome of this case.

Defendant was tried and convicted of two counts of rape in the second degree. ORS 163.365. At sentencing, the trial court refused to impose the mandatory minimum sentence of 75 months for the crime of second-degree rape required by ORS 137.707, finding that such a sentence would be unconstitutional as applied to this defendant, under Article I, section 16, of the Oregon Constitution.[1] The court instead imposed a sentence of 35 months' imprisonment pursuant to the sentencing guidelines. On appeal, the state seeks reversal and a remand for resentencing on the ground that the trial court erred in failing to impose the statutory mandatory minimum sentence of 75 months. For the reasons set forth below, we reverse and remand for imposition of the 75-month sentence required by ORS 137.707.

The facts of the underlying convictions are not in dispute. Defendant was born July 15, 1980. His "girlfriend," Strobel, was born July 25, 1983. Thus, defendant was three years and 10 days older than Strobel. On two different occasions, October 20 and 21, 1996, Strobel came to the house where defendant was staying. Each time, she went into the bedroom where defendant was sleeping. She woke up defendant, joined him in the bed, and engaged in sexual foreplay. Defendant and Strobel then engaged in sexual intercourse.

Under ORS 163.365, "[a] person who has sexual intercourse with another person commits the crime of rape in the second degree if the other person is under 14 years of age." A defendant charged with rape in the second degree has

---

[1] Article I, section 16, of the Oregon Constitution, provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

a complete defense to the charge if "the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, [and the defendant] was less than three years older than the victim at the time of the alleged offense." ORS 163.345(1). Because Strobel was under the age of 14 at the time of the offenses, and because defendant was more than three years older than she was, defendant violated ORS 163.365 when he had sexual intercourse with her. Strobel's inability to consent was due solely to her age.

■       Defendant's convictions for these crimes are not at issue on appeal. The only issue is whether the trial court correctly determined that a mandatory minimum prison sentence of 75 months for these crimes would constitute cruel and unusual punishment under the circumstances.

At sentencing, the state presented evidence that defendant had been referred to the juvenile department 14 times, for activities such as theft, carrying a concealed weapon, minor in possession, unauthorized entry into a motor vehicle, and curfew violations. The state also presented evidence that, after the crimes at issue here, defendant had been adjudicated on a charge of third-degree robbery and committed to MacLaren[2] for a period of five years. Defendant admitted membership in a gang, and the state presented evidence by MacLaren staff that defendant was believed to be involved in gang activity at MacLaren.[3] For that reason, the staff viewed him as only marginally amenable to treatment. The police officer who initially investigated the present crimes testified that he had become familiar with defendant in 1995 because defendant and other gang members often "hung around" in a local mall. The officer opined that defendant was devious and adept at manipulating adults.

A letter from Strobel was introduced into evidence:

"When I first met Justin, my friend told him that I was 14 or 15 when I wasn't. He really didn't know how old I was

---

[2] MacLaren is a juvenile correctional facility.

[3] At MacLaren, a handmade booklet relating to the formation of a gang was found in defendant's possession.

for quite a while. As far as I am concerned, Justin didn't do anything wrong. From the beginning I never thought that these charges should have been made against Justin. I still think this whole thing is stupid and should have never been pursued. As far as I am concerned, I was never a victim of rape. I don't think the DA thought I was a victim either because even though I wanted to talk to her, she never would talk to me. That made me feel like she really wasn't interested in the truth or justice.

"Maybe what happened wasn't right legally, but we didn't know we were breaking any law. We just thought we were in love, and it happened because we both wanted it to. I know that everybody thinks we are too young to know what love is, but we don't think so. I still love Justin, and I know he still loves me."

Strobel's mother, who originally reported the sexual contact between her daughter and defendant to the authorities, also testified that although she did not condone what her daughter and defendant had done, she did not consider "two young kids making love" to be rape. She further stated that she thought that sentencing defendant "to over six years in jail is really cruel and unnecessary, and he doesn't deserve it."

The state presented evidence from Dr. Charlene Sabin, a psychologist, who testified that, when a child under the age of 14 engages in sexual activity, it may harm her self-image. Sabin further opined that, if a child engages in sexual activity because she believes herself to be in love, it may be more detrimental because she might "further internalize that behavior as the way to relate in future relationships." Sabin also indicated that, if the young female's mother condones the sexual activity, it would imply that "sex is the coinage of relationships[.]"

At sentencing, the trial court held that imposition of the mandatory minimum sentence of 75 months for defendant's crime would constitute cruel and unusual punishment, in violation of Article I, section 16, of the Oregon Constitution. The court noted that defendant was troubled and out of control and in need of a structured program to develop work and academic skills. The court found, however, that a sentence of 75 months would be cruel and unusual, given the

circumstances of the crimes, and instead imposed a sentence of 35 months of imprisonment. The court stated:

"I do find that the victim in this case, [Strobel], says that she is not a victim. Whether she's a victim is a philosophical question and one that many psychiatrists would disagree with her. I further find that [Strobel] insists vocally that she was a willing participant and that the defendant in this case—at least at that time, October '96—was unaware of her true age.[4]

"I further find that the victim and the victim's mother, who testified in this proceeding, oppose categorically not only the proposed Measure 11 sentence but even the pursuing of a criminal charge in the first place. And I find that their position was vocal and constant, and it came to the attention of this Court even before there was a conviction in this case.

"I further find that had the victim, [Strobel], been ten days older, there would be no crime at all here, none, but she wasn't ten days older."

The court then imposed concurrent sentences on both second-degree rape convictions for a total of 35 months, followed by three years of post-prison supervision.

On appeal, the state argues that the trial court erred in holding that the mandatory minimum sentence of 75 months required for the crime of second-degree rape was cruel and unusual as applied to the facts of this case. The state's brief devotes a great deal of attention to the sentencing court's diatribe against Measure 11 sentencing. A recitation of the sentencing court's attitude toward Measure 11, and the state's disagreement with the sentencing court, would benefit neither bench nor bar, nor would it contribute to the resolution of this case. We therefore turn to the question of whether the trial court correctly concluded as a matter of law that imposing a sentence of 75 months' imprisonment

---

[1] The state argues on appeal that uncontradicted evidence demonstrated that defendant knew Strobel's age at the time of the crimes. The state is incorrect. Evidence presented at trial showed that defendant knew Strobel's age at the time he was interviewed by a police officer in November 1996. That evidence is not inconsistent with the evidence presented at sentencing that defendant did not know Strobel's true age until after the crimes occurred. Therefore, we accept the trial court's factual finding, because evidence in the record supports it.

for defendant's crimes would be cruel and unusual under Article I, section 16, of the Oregon Constitution.

■    Article I, section 16, of the Oregon Constitution, provides, in relevant part, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." The test for determining whether a sentence violates the proportionality provision in Article I, section 16, is whether the sentence is "so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." *State v. Isom*, 313 Or 391, 401, 837 P2d 491 (1992). That test was first conceived by the court in *Sustar v. County Court of Marion Co.*, 101 Or 657, 665, 201 P 445 (1921). In *Sustar*, the defendant had been convicted of possession of "moonshine" and, in a writ of review proceeding, argued that his sentence of six months in the county jail and a $500 fine violated the proportionality provision of Article I, section 16.

In rejecting *Sustar*'s constitutional challenge, the court first quoted from *Weems v. United States*, 217 US 349, 54 L Ed 793, 30 S Ct 544 (1910), where the Supreme Court in an Eighth Amendment case had stated:

"It is a precept of justice that punishment for crime should be graduated and proportional to the offense."

Drawing on that language, the *Sustar* court stated:

"In order to justify the court in declaring punishment cruel and unusual with reference to its *duration*, the punishment must be so proportioned to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." 101 Or at 665 (emphasis added).

Defendant did not contend at trial nor does he in this court argue that the sentence mandated for his crimes violates the Eighth Amendment. However, we initially examine the United States Supreme Court's "proportionality" jurisprudence because our test is derived from *Weems* and also to provide some history about the concept of durational proportionality in sentencing and the history and substantial deference paid by courts to the legislature's prerogative in fixing the appropriate punishment for crime.

Whether *Weems* was truly a proportionality case, or one involving only the manner or method of punishment, has been the subject of some debate, as is the question of whether the Eighth Amendment actually extends to the proportionality of prison terms. In *Solem v. Helm*, 463 US 277, 284, 103 S Ct 3001, 3006, 77 L Ed 2d 637, 645 (1983), a majority of the Supreme court stated that the final clause of the Eighth Amendment "prohibits not only barbarian punishments, but also sentences that are disproportionate to the crime committed."

The *Solem* court held that a proportionality analysis under the Eighth Amendment was applicable to capital, as well as noncapital, cases. However, the court cautioned that, in noncapital cases, "successful challenges to the proportionality of particular sentences will be exceedingly rare," and that reviewing courts should grant "substantial deference to the broad authority that legislatures necessarily possess in determining the type and limits of punishments for crimes." *Id.* at 289-90.

To determine whether a particular sentence is constitutionally disproportionate to the crime, the *Solem* majority fashioned a three-part test indicating that a proportionality analysis under the Eighth Amendment should involve consideration of: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.

Eight years later, however, the court severely fractured over whether constitutional proportionality was a component of the Eighth Amendment prohibition against cruel and unusual punishment. In *Harmelin v. Michigan*, 501 US 957, 111 S Ct 2680, 115 L Ed 2d 836 (1991), the Court upheld the defendant's mandatory life sentence for possession of 650 grams of cocaine but could not reach agreement on the issue of constitutional proportionality. Justice Scalia in the lead opinion, joined by Justice Rehnquist, wrote that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." 501 US at 965. However, in a separate opinion concurring in the decision to uphold the sentence, Justices Kennedy, O'Connor and Souter allowed that the

Eighth Amendment does encompass a narrow proportionality principle. In that concurring opinion, Justice Kennedy stated (1) "that the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures not courts," (2) that successful challenges to the proportionality of particular sentences are exceedingly rare, and (3) that the Eighth Amendment forbids only extreme sentences that are *grossly disproportionate* to the crime. *Id.* at 998, 1001.

The contours of the Eighth Amendment are imprecise primarily because a proportionality component is not explicit in the wording of the Eighth Amendment. However, Article I, section 16, does contain a proportionality clause. Although the Oregon Supreme Court has not explicitly adopted the United States Supreme Court's proportionality methodology, the Oregon Supreme Court has identified similar principles as controlling under Article I, section 16.

First, the Oregon Supreme Court long ago recognized that establishing punishments for specific crimes is a matter reserved for the legislature, subject to constitutional limitation. In *State v. Smith*, 128 Or 515, 524, 273 P2d 323 (1929), the court stated:

> "The power to declare what punishment may be assessed against those convicted of crime is not judicial, but legislative, power, controlled only by the constitution." (Citation omitted.)

Second, successful challenges based on constitutional proportionality have been exceedingly rare in Oregon. *See State v. Shumway*, 291 Or 153, 630 P2d 796 (1981) (a statutory scheme that provides a greater penalty for a lesser included offense violates Article I, section 16, of the Oregon Constitution); *Cannon v. Gladden*, 203 Or 629, 281 P2d 233 (1955) (same). Both *Shumway* and *Cannon* involved vertically disproportionate sentences, which are not an issue here.

Third, Article I, section 16, like the Eighth Amendment, forbids only those sentences that are *grossly disproportionate* to the crime. For example, in *State v. Teague*, 215 Or

609, 336 P2d 338 (1959), the defendant, without a "substantial" criminal record, was sentenced to 12 years for forgery. The court appears to have considered the sentence "lengthy" when compared to the crime but, nevertheless, rejected the defendant's Article I, section 16, challenge:

> "We are asked to hold that these sentences are so excessive as to violate § 16, Art 1, of the Constitution of Oregon. The record indicates that the defendant had not previously had a substantial criminal record. There is little to indicate why the trial judges imposed sentences of this severity in view of the nature of the crime and the prior conduct of the defendant.
>
> "We cannot, however, impose our judgment on the trial court. *State v. Boloff*, 138 Or 568, 646 4 P2d 326, 7 P2d 775 [1932]. The sentence is not one which is 'so proportioned to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances.' *Sustar v. County Court of Marion County*, 101 Or 657, 665, 201 P 445 [1921]. We could not attempt to determine what prompted the court in the first instance to impose the seemingly lengthy sentence of twelve years. We are obliged, however, to suggest that the only recourse now available lies with the Chief Executive or State Board of Parole and Probation. If the facts of the case and conduct of the defendant warrant undoubtedly that body will provide suitable relief." *Teague*, 215 Or at 611.[5]

Having identified these three principles as relevant to the assessment of a proportionality challenge under Article I, section 16, we turn first to an examination of the nature of the crime at issue here. Statutory rape laws were among the first laws ever composed by mankind. They are "at least as ancient as the 4000-year-old Code of Hamurabi." Rita Eidson, *The Constitutionality of Statutory Rape*, 27 UCLA L Rev 757, 762 (1980). English law made statutory rape a crime as early as 1275, and those laws were adopted in the United States via the English common law. *Id.* The traditional cornerstones of statutory rape laws have always been that a female, younger than some specified age, cannot give consent

---

[5] In *Teague*, the court was reviewing a sentence imposed by the trial court, not examining the constitutionality of a sentence mandated by the legislature. However, the proportionality test is the same in either instance.

to engage in sexual activity, and a mistake of fact by the offender as to the female's age is no defense to the crime.[6]

Oregon's first criminal code set the age of consent at 14 years when it took effect on May 1, 1865. *General Laws of Oregon*, ch 53, § 731 (Deady 1845-1864). Section 521 provided that,

> "if any person shall carnally know any female child, *under the age of fourteen years*, * * * such person shall be deemed guilty of rape, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than three, not more than twenty years." *Id*. at ch 43, § 521.

The code was renumbered in 1872 with the same language appearing in Title II, chapter II, section 1733. *Hill's Annotated Laws of Oregon*, v 1, pp 749 and 897 (1887). Amendments to the criminal code in 1895 raised the age of consent to 16, providing that,

> "if any person over the age of sixteen years shall carnally know any female child under the age of sixteen years, * * * such person shall be deemed guilty of rape, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than three, not more than twenty years." Bellinger & Cotton, *The Codes and Statutes of Oregon*, 635 (1901).

The rape statute was renumbered several times before 1953, when the legislature enacted the Oregon Revised Statutes (ORS), combining OCLA 23-420 (rape) with OCLA 26-940 (proof of penetration) to create ORS 163.210 (rape; penetration needed), which provided:

> "(1)  Any person over the age of 16 years who carnally knows any female child under the age of 16 years * * * is guilty of rape, and shall be punished by imprisonment in the penitentiary for not more than twenty years.
>
> "(2)  Proof of actual penetration into the body is sufficient to sustain an indictment for rape."

---

[6] *Historically, the crime of statutory rape applied to carnal knowledge of minor females only. That has changed in the latter half of the twentieth century. Today a substantial majority of states' statutory rape laws, including Oregon's, are gender neutral.*

Essentially, the prohibition against persons over the age of 16 years from having carnal knowledge of minor females under the age of 16 remained unchanged between 1895 and 1971.

In 1971, the legislature repealed ORS 163.210 and replaced it with the three statutory degrees of rape defined under ORS 163.355 (third-degree rape), ORS 163.365 (second-degree rape), and ORS 163.375 (first-degree rape). Or Laws 1971, ch 743, §§ 109, 110, 111, and 432. The new scheme raised the overall age of consent for minor females to 18 but graduated the degrees of rape based on the victim's age. In addition, ORS 163.345 was enacted to provide a defense for offenders less than three years older than the victim. In 1971, ORS 163.365, which defined the degree of rape that is relevant here, provided:

"(1)   A male who has sexual intercourse with a female commits the crime of rape in the second degree if:

"(a)   The female is incapable of consent by reason of mental defect, mental incompatibility or physical helplessness; or

"(b)   The female is under 14 years of age.

"(2)   Rape in the second degree is a class B felony."

ORS 163.365 has been amended twice since it was enacted in 1971. In 1989, subsection (a) was deleted. Or Laws 1989, ch 359, § 1.[7] In 1991, Oregon's rape laws were made gender neutral, replacing the terms "male" and "female" with "person." Or Laws 1991, ch 628, § 2.

The history of Oregon's statutory rape laws thus reveals that Oregonians have always considered statutory rape a serious crime generally mandating some term of incarceration. Currently, under the sentencing guidelines, a conviction for rape in the second degree carries with it a presumptive sentence of 35 months' imprisonment, the sentence imposed by the trial judge here. The term of imprisonment

---

[7] Sexual intercourse with a female incapable of consent by reason of mental defect, mental incompatibility or physical helplessness was added to ORS 163.375, rape in the first degree. Or Laws 1989, ch 359, § 3.

under the former indeterminate sentencing scheme is 10 years' imprisonment. ORS 161.605(2).

Defendant offers little argument that rape in the second degree is not a serious crime. Instead, he focuses mainly on the particular facts and circumstances of his offenses, arguing that his age, the age of the victim, the victim's refusal to see herself as a victim, and the victim's mother's express desire that defendant not be sentenced to prison renders the mandated sentence "so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper."

Rape in the second degree generally does not involve force, but involves sexual intercourse where one of the participants is under the age of 14. That being so, the victim's attitude about herself or her mother's perception that sexual intercourse between a 16-year-old and a 13-year-old is "love making" and does not merit prison is not a particularly rare or significantly mitigating circumstance under the statutory definition of the crime. Likewise, at least in the context of this constitutional challenge to the mandatory sentence, little significance can be ascribed to the fact that defendant could have asserted a complete defense to the criminal charge if he or the victim had a different birth date. The legislature is entitled to define the limits of the defense. Here, it established a defense for persons less than three years older than the victim, not three years and 10 days. In other words, defendant's conduct fits squarely within the definition of the crime, he had no defense, and there is nothing in the facts or circumstances indicating that his conduct is of a kind or quality "rarely" captured by the statutory definition of rape in the second degree.

Having examined the nature and particulars of the crime, we now turn to the question of whether the mandatory sentence at issue here is "so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." We begin with the obvious. A sentence mandated by the legislature or citizenry, no matter how severe it may be perceived by some, does not violate Article I,

section 16, of the Oregon Constitution, unless a court can conclude that the moral sense of *all* reasonable persons is shocked by the sentence.

Here, defendant, as opposed to the dissent, makes no argument that Oregon's mandatory sentencing law is somehow out of step with the sentencing laws of other states for similar crimes.[8] Nor does defendant make any empirically based argument about the penal sentiments of "all reasonable persons," as to the imposition of a mandatory sentence for this form of rape. Rather, defendant and the dissent assert that, under the particular facts and circumstances of this case, it is a self-evident proposition that the mandatory 75-month sentence is shocking to *"all* reasonable people." (Emphasis added.) We do not agree that the proposition is self evident or that, in a case like this, our collective, albeit subjective, judgment about the proper length of a sentence for this particular crime is particularly weighty in the analysis. *See Teague*, 215 Or at 611. Certainly, there may be the rare occasion when a crime or its particulars is so petty or

---

[8] A regional survey of statutory rape laws reveals a variety of legislative approaches to the type of conduct at issue here. In Nevada, for example, it does not appear that defendant's conduct would be a crime, while in Washington and Utah defendant's conduct would be classified as a serious felony.

Nevada defines the crime of statutory sexual seduction as the sexual penetration of a person who is less than 16 years old by a person who is more than 18 years old. Nev Rev Stat § 200.364. California law states, generally, that a person who engages in an act of unlawful intercourse with a minor who is three years younger than the perpetrator is guilty of either a misdemeanor or a felony and shall be punished by one year in the county jail or by imprisonment in the state prison. Cal Penal Code § 261.5.

Other states in the region treat this sort of conduct far more seriously. In Idaho, for example, penetration of a female under the age of 18 is rape, Idaho Code § 18-6101, and is punishable by imprisonment for not less that one year, and up to life. Idaho Code § 18-6104. In Montana, a person who has sexual intercourse with a child who is less than 16-years-old shall be imprisoned for not less than four years or more than 100 years, if the offender is more than three years older than the victim. Mont Code Ann § 45-5-503. In Utah, any person who has sexual intercourse with a child under the age of 14 years commits the crime of rape of a child and is subject to a mandatory minimum sentence of six years and may be sentenced to life in prison. Utah Code Ann § 76-5-402.1.

Washington's scheme, which is most similar to Oregon's, provides that a person who has sexual intercourse with a child between the ages of 12 and 14 commits rape in the second degree, a Class A felony, if the offender is more than three years older than the child. Wash Rev Code § 9A.44.076. Class A felonies are punishable by imprisonment from seven years and six months to 20 years and five months, depending on the offender's criminal history. Wash Rev Code § 9.94A.310.

trivial that we can confidently conclude, without more, that the mandatory sentence for that crime is self-evidently shocking to the moral sense of *all* reasonable people. However, as explained above, and unlike the dissent, we do not view either the crime or the circumstances here as petty or trivial.

On the other hand, the state argues that the voters' and legislators' obvious intolerance of juvenile crime and their collective belief that sexual intercourse with a person under 14 years of age deserves a mandatory sentence of 75 months is a conclusive expression by society that the moral sense of *all* reasonable people is not shocked by the sentence. For now, we do not adopt or endorse the state's argument or resolve that question because there is sufficient precedent in this court and the Supreme Court demonstrating conclusively that imposing the 75-month sentence mandated for defendant's crime is not so shockingly disproportionate as to violate Article I, section 16.[9]

Here, it is true that defendant had no past history of sex crimes. However, at sentencing, defendant described himself as a "gangster," his juvenile record is deplorable and the best that can be said for his prognosis for rehabilitation is that it is less than likely, given his history and his behavior since the crimes at issue occurred. As indicated above, in *Teague,* a defendant with no substantial criminal record received a prison sentence of 12 years for the crime of forgery. Although recognizing that the sentence was "seemingly lengthy" in view of the nature of the crime and the prior conduct of the defendant, the court stated that it was "not one which is 'so proportioned to the offense committed as to shock the moral sense of *all* reasonable men as to what is right and proper under the circumstances.' " *Id.* at 611, *quoting Sustar,* 101 Or at 665 (emphasis added). More recently, in *State v. Rhodes,* 149 Or App 118, 941 P2d 1072 (1997), *rev den* 326 Or 390 (1998), the defendant, a 15-year-old convicted of sex

---

[9] The dissent rejects this argument by the state, in part, asserting that the voters, in passing Measure 11, "expressed no opinion as to the imposition of a specific sentence in particular factual circumstances." 166 Or App at 589. With respect, that begs the question. The whole point of mandatory sentencing, and what the voters intended, was that, in all cases, persons committing certain crimes will receive no less than the prescribed sentence, regardless of the circumstances of the crime.

abuse in the first degree for touching his half-sister's vagina, contended that the 75-month mandatory sentence he received pursuant to Measure 11 was unconstitutional as applied in his case. We rejected the defendant's claim, stating simply that the sentence in light of the circumstances was "not so disproportionate as to shock the moral sense of *all* reasonable persons." *Id.* at 123 (emphasis added). The dissent's conclusions are incompatible with these cases.

Instead, the dissent asserts that our assessment of the "harshness of the penalty" is deficient apparently because we fail to account for defendant's juvenile status. 166 Or App at 590-91. The dissent is wrong. Oregon's very first criminal code set the minimum sentence for "statutory rape" at "no less than three, [nor] more than twenty years." Not less than three years in prison is a form of minimum sentence and, because there was no juvenile code in 1865, a 16-year-old was subject to a minimum sentence. Second, the current statutory scheme does, in fact, account for defendant's juvenile status, a significant point apparently overlooked or not understood by the dissent. The fact is that defendant is serving his sentence under the Oregon Youth Authority in the same facility and is offered the same reformative treatment as other offenders incarcerated under the juvenile code. ORS 137.124(5)(a) (cross referencing ORS 137.707); ORS 420A.010(5)(b).

■ The dissent's refusal to accord the legislature and the citizens of Oregon the deference due in establishing the punishment for specific crimes is exemplified by its comparison of various crimes and lesser sentences it considers more serious than the rape crime at issue here. However, what the dissent never explains is why the legislature may not rationally determine that the rape crime at issue here is more serious than robbery, or assault, or the other crimes mentioned by the dissent.[10] Within constitutional limits, it is for the legislature, not the courts, to determine the relative seriousness of crimes. Comparing apples and oranges, as the dissent does,

---

[10] The dissent also fails to acknowledge that, although the trial court failed to impose the mandated sentence, it did order defendant's incarceration for 35 months. The dissent never indicates if it approves the 35-month sentence or prefers some other.

fails to advance the discussion in any meaningful manner. *See, e.g., State v. Turner*, 296 Or 451, 676 P2d 873 (1984).

Finally, the dissent fails to deal with recent precedent from this court that severely undercuts every premise relied on by the dissent. As indicated above, in *Rhodes*, we rejected a 15-year-old's as-applied challenge to his 75-month sentence for sex abuse. The dissent fails to explain why the 75 months for inappropriate touching meted out in *Rhodes* to that 15-year-old was constitutional, and here 75 months is not constitutional where this 16-year-old defendant engaged in multiple acts of sexual intercourse with a 13-year-old child. It is patently inconsistent for the dissent to assert that a sentence of 75 months in this case is "so disproportionate as to shock the moral sense of all reasonable persons" when the sentence we approved in *Rhodes* was not.

The Legislative Branch has defined the crime of second-degree rape to encompass defendant's conduct, and the citizens of Oregon and the legislature have, as is their prerogative, determined that a conviction for rape in the second degree mandates a sentence of 75 months' imprisonment regardless of the circumstances of the crime. We must give substantial deference to that prerogative. *See Jensen v. Gladden*, 231 Or 141, 372 P2d 183 (1962) ("It is the province of the legislature to establish the penalties for the violation of the various criminal statutes and if the penalties are founded upon an arguably rational basis we have no authority to hold that they are invalid.").

Individual judges may believe that public safety, deterrence and reformation of this offender may be achieved by a sentence different than the one mandated. However, our individual or even collective belief about the wisdom of the mandated sentence is not the test. Instead, it is our duty, under the constitution, to uphold the mandated sentence unless we can say that the sentence shocks the "moral sense of *all* reasonable" people. That we cannot say.

Reversed and remanded for resentencing under ORS 137.707.

**EDMONDS, J.,** concurring.

As one of two former trial judges on this court, I bring a perspective to this case based, in part, on the experience of having sentenced persons to periods of incarceration.[1] My experience tells me that the mandatory minimum sentence required in this case is unjust because the punishment imposed by the statute is not the just desert of the circumstances of the crime. But whether the required sentence achieves justice is not the question before us. The electorate has made a value judgment about the severity of punishment in these kinds of cases, and my understanding of our role as interpreters of the constitution is that we are constrained to uphold the law unless we can say, based on our value judgment, that the sentence shocks the conscience of all reasonable people. I am unable to say that, particularly in light of the fact that, near the time of the adoption of Article I, section 16, defendant could have been sentenced to not less than three and not more than 20 years for the same crime.

**BREWER, J.,** concurring.

Although I agree with the lead opinion's conclusion that the minimum statutory sentence for defendant's conviction does not, as applied, violate Article I, section 16, of the Oregon Constitution, I write separately to express a different view of the principles that guide our analysis.

I begin with my concern that neither the lead opinion nor the dissent has clearly identified the provision of Article I, section 16, that governs defendant's challenge to the sentence mandated by Measure 11 in this case. Among other requirements, section 16 both prohibits cruel and unusual punishment and also commands that all penalties must be proportioned to the offense. *Sustar v. County Court for Marion Co.*, 101 Or 657, 665, 201 P 445 (1921). The choice of focus matters because, although those requirements have not always been analyzed separately, they embody distinct constitutional principles.

---

[1] That is not to say that my perspective is better than that of my colleagues, only to say it arises from a different experiential base.

The lead opinion, the dissent, and the parties appear to agree that the governing constitutional test is whether the required sentence is "so disproportionate to the offense as to shock the moral sense of *all reasonable persons* as to what is right and proper." *State v. Isom*, 313 Or 391, 402, 837 P2d 491 (1992) (emphasis added). The test implicates Article I, section 16's, prohibition against cruel and unusual punishment but does not relate to its proportionality requirement.[1] *State v. Ferman-Velasco*, 157 Or App 415, 430-31, 971 P2d 897 (1998) (Warren J., dissenting), *rev allowed* 328 Or 666 (1999). Therefore, I presume that both opinions mean to focus on the prohibition against cruel and unusual punishment, rather than on the proportional penalty command.

The challenge lies in the identification of a principled methodology for applying the test governing the prohibition against cruel and unusual punishment. That problem is exacerbated in this case because it seems probable that *most* people would consider the minimum sentence under Measure 11 to be unreasonable as applied to defendant's circumstances. However, such an assessment is more than a statement of objective probability; it includes a subjective component that is the product of a beholder's personal sense of fairness. Although I, for example, would like to think that my perplexity at the state's decision to prosecute defendant under Measure 11 is the result of reasonable, if not enlightened judgment, a faint but persistent voice warns that my personal sense of fairness is a pitifully small spoke in the diverse wheel of community values. What, then, of principle?

The lead opinion and the dissent each follow the analytic framework discussed in *Solem v. Helm*, 463 US 277, 103

---

[1] The proportional penalty command has generally been applied in so-called vertical disproportionality cases, to strike down sentences for lesser included crimes that were more severe than sentences permitted for a more serious offense. *See, e.g., State v. Shumway*, 291 Or 153, 157-60, 630 P2d 796 (1981) (murder compared to aggravated murder); *Merrill v. Gladden*, 216 Or 460, 465-68, 337 P2d 774 (1959) (assault with intent to rob compared to completed robbery); *Cannon v. Gladden*, 203 Or 629, 631-33, 281 P2d 233 (1955) (assault with intent to commit rape compared to completed rape). The courts have been reluctant, on the other hand, to sustain proportionality challenges by comparing the penalties prescribed for unrelated offenses. *See, e.g., State v. Turner*, 296 Or 451, 455-56, 676 P2d 873 (1984) (statutory sentence for murder not fairly compared with dangerous offender sentence appended to burglary conviction).

S Ct 3001, 77 L Ed 2d 637 (1983), a case decided under the Eighth Amendment. Although that framework is certainly of interest, no previous decision of the Supreme Court or of this court has adopted it in the context of a constitutional challenge under section 16. And, of course, it is far from clear that the United States Supreme Court would follow that test today in resolving an Eighth Amendment problem, in light of the fact that at least two members of that court believe that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 US 957, 965 111 S Ct 2680, 115 L Ed 2d 836 (1991).

Beyond the question of its precedential value, however, I urge caution against primary reliance on the *Solem* test because it is not free from analytic pitfalls. The first part of the test is somewhat tautological—the search for the meaning of the term "cruel and unusual" is not boldly advanced by asking whether the penalty is "harsh." That question will, for many, yield a preconceived answer. Of more fundamental concern, the second and third portions of the test weigh the validity of a new and sweeping change in sentencing philosophy such as Measure 11 only against existing comparators. That perspective is limited and ignores other fair considerations.

The fact, for example, that a wholesale modification of sentencing standards for certain classes of offenses may represent a significant departure from past levels for those offenses is relevant to the inquiry but should not, of itself, be deemed conclusive. Such a legislative decision may well represent a collective judgment by the people that the enacted change is an appropriate response to prevailing public welfare and safety concerns. That judgment, within constitutional limits that we must ascertain and safeguard, is entitled to considerable deference. *See Ferman-Velasco*, 157 Or App at 423.

Although the *Solem* test is helpful, I am persuaded that our decision is better, albeit still incompletely, guided by a review of Oregon cases previously decided under section 16. My review discloses that only one criminal sentence has ever been reversed by an Oregon appellate court under section 16 because it violated the prohibition against cruel and unusual

punishments. The first and only reported example of such a decision appears to be *State v. Ross*, 55 Or 450, 104 P 596 (1909), 106 P 1022 (1910), *appeal dismissed sub nom Ross v. Oregon*, 227 US 150, 33 S Ct 220, 57 L Ed 458 (1913). There, in separate decisions arising from a larceny conviction, the court first vacated a prison sentence of 790 years imposed in lieu of payment of a fine exceeding $500,000 and later struck the fine itself, because it simply could never be paid. 55 Or at 474, 480. The court concluded, without detailed analysis, that both features of the sentence were unconstitutional under section 16. *Id.* Other cases, such as *Cannon*, although employing the shock to the moral sense test, were actually straightforward proportionality cases. 203 Or at 632-33; *see also Ferman-Velasco*, 157 Or App at 432-33 (Warren, J., dissenting).

We have recently affirmed our understanding that, in order to constitute cruel and unusual punishment, a sentence must shock the moral sense of *all reasonable persons*, and that the test is not whether reasonable people disagree with the sentence. *State v. Melillo*, 160 Or App 332, 335-36, 982 P2d 12, *rev den* 329 Or 438 (1999) (test is not whether sentence shocks the conscience of "fair-minded" persons, because *Cannon*'s "all reasonable persons" formulation is the standard). Logic and history both show that that test erects an extremely high barrier for any constitutional challenge to surmount. The lead opinion cites several appellate decisions upholding sentences under that standard, despite the reviewing courts' evident skepticism about the merits of the sentence. Other examples likewise exist. *See, e.g., State v. Boloff*, 138 Or 568, 607-08, 4 P2d 326 (1931) (defendant with no criminal history sentenced to 10 years' imprisonment for criminal syndicalism); *State v. Martin*, 15 Or App 498, 505, 516 P2d 753 (1973), *rev den* (1974) (defendant sentenced to three years' imprisonment for taking money owed to him from a robbery); *State v. Trujillo*, 7 Or App 236, 241-42, 489 P2d 977 (1971), *overruled on other grounds by Martin*, 15 Or App at 505 (59-year-old defendant sentenced to 15 years' imprisonment for taking money owed to him in a robbery after he had attempted three times to collect it). Those examples involved challenges to sentences imposed by judges that were not statutory minimum sentences but were, instead,

severe sentences that were imposed within statutory limits. In fact, the appellate courts have sometimes upheld sentences that were shorter than the maximum statutory duration, with no more analysis than the observation that the trial court acted within its statutory authority. *See, e.g.*, *State v. Smith*, 6 Or App 27, 32, 487 P2d 90, *rev den* (1971).

It is even more rare for an appellate court to uphold a constitutional challenge to a statutory minimum sentence because the punishment would be cruel and unusual. In fact, such a result is *unprecedented* under Article I, section 16. There is good reason for that unbroken history of judicial restraint. In *Jensen v. Gladden*, 231 Or 141, 372 P2d 183 (1962), a post-conviction petitioner, sentenced to an indeterminate sentence of life imprisonment after separate convictions for contributing to the delinquency of a minor and indecent exposure, argued that his sentence was cruel and unusual and, therefore, invalid under section 16. The court dismissed that argument, stating

"It is the province of the legislature to establish the penalties for the violation of the various criminal statutes and if the penalties are founded upon an *arguably rational basis* we have no authority to hold that they are invalid." *Id.* at 146 (emphasis added).

In *State ex rel Huddleston v. Sawyer*, 324 Or 597, 627-28, 932 P2d 1145, *cert den sub nom Sawyer v. Oregon, Huddleston*, 522 US 994 (1997), the court, similarly applying a "rational basis" test, held that Measure 11's sentencing scheme did not violate the Eighth Amendment prohibition against cruel and unusual punishment. Although *Jensen* and *Huddleston* each involved facial challenges to legislative sentencing schemes, there is no reason to conclude that as-applied challenges should be viewed through a different lens. If there is an arguably rational basis for the application of a mandatory sentence to a particular defendant, then, by force of logic, the moral sense of at least some reasonable people would not be shocked by the sentence.

The truth is, there is an arguably rational basis in the facts of this case to conclude that, as applied, the statutory minimum sentence is appropriate. Few facts emerged in

this case that would have been unexpected in a facial challenge to Measure 11's sentencing scheme for second-degree rape. Like the facts here, most statutory rape prosecutions involve consensual sex, and many are complicated by confused parental values. Admittedly, the most troubling dimension is defendant's own youth. However, the record shows that defendant is highly manipulative, even in his dealings with adults. The victim, a 13-year-old girl, is convinced that she is in love with him. As much as others may disagree, there are reasonable people who would conclude that the three-year age difference between defendant and the victim is especially significant because the victim is a very young adolescent and, thus, despite defendant's own youth, that the statutory minimum sentence is appropriate.

Whether we, as judges, agree with defendant's sentence under Measure 11 is largely beside the point. It may well be that most people who voted for Measure 11 would have recoiled had they considered this particular application of the minimum sentence for second-degree rape. Undoubtedly, some people might believe that defendant should not have been prosecuted at all. Others might agree with the trial court's sentence of 35 months' imprisonment. But if nearly three years in prison is not cruel and unusual punishment in this case, by what measure do we conclude that three years and four months more is too much? I submit that there is no compelling answer to that question. We are not a community focus group, nor are we empowered to perform our own electoral recount. The law passed and our review requires a different test.

Although there are constitutional limits to the power of the legislature and the voters to establish minimum sentences for criminal offenses, there are also countervailing constitutional limits on judicial authority to nullify the legislative will. This is a close case, one in which we must tread softly at the margins in order to pay proper respect to the limits of our own authority under section 16. We cannot confidently proclaim that the moral sense of all reasonable people would be shocked by the minimum sentence required by law in this case. Therefore, the sentence required by the law is not unconstitutional as applied to defendant.

Landau, J., joins in this concurrence.

**HASELTON, J.,** dissenting.

The majority concludes that, under Measure 11, a 16-year-old must spend more than six years in prison for having sex with his 13-year-old girlfriend. That is so notwithstanding that the girlfriend initiated the sexual conduct and that defendant believed that she was 14.

That result is unprecedented in Oregon and unique in the United States. It is the product of the peculiar convergence of a strict liability crime, a mandatory minimum sentencing scheme, and the mandatory treatment of the juvenile defendant as an adult. I repeat: There is no reported case of a 16-year-old in the United States *ever* receiving a mandatory minimum sentence of over six years in prison for statutory rape. Because that result is so fundamentally unfair as to shock the conscience of any reasonable person, I dissent.

Since Measure 11 was enacted in 1994, this court has reviewed—and, has affirmed—hundreds of Measure 11 sentences.[1] In each of those cases, we have acted in accordance with our sworn obligation to enforce the will of the citizens of Oregon, as expressed through the initiative process, within broad constitutional limits.

But there *are* limits.

The exact nature of those constitutional limits is unsettled. Although the Supreme Court explicitly contemplated, and implicitly invited, "as applied" proportionality challenges to Measure 11 sentences in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 614, 932 P2d 1145, *cert den* 522 US 994 (1997), it did not address what considerations are pertinent to the constitutional "as applied" inquiry or how those considerations should be assessed. The *test* is whether the

---

[1] *See, e.g., State v. Melillo*, 160 Or App 332, 335-36, 982 P2d 12, *rev den* 329 Or 438 (1999); *State v. Bowman*, 160 Or App 8, 17-18, 980 P2d 164 (1999); *State v. Silverman*, 159 Or App 524, 977 P2d 1186, *rev den* 329 Or 528 (1999); *State v. Shoemaker*, 155 Or App 416, 419, 965 P2d 418, *rev den* 328 Or 41 (1998); *State v. Rhodes*, 149 Or App 118, 123, 941 P2d 1072 (1997), *rev den* 326 Or 390 (1998). The only case in which we have sustained a constitutional challenge to a Measure 11 sentence was *State v. Lavert*, 164 Or App 280, 286-87, 991 P2d 1067 (1999), but we did not reach the merits of the constitutional issue. Rather, we concluded that we could not review the trial court's refusal to impose a Measure 11 sentence because the state had failed to designate a sufficient record on appeal.

sentence imposed is "so disproportionate to the offense as to shock the moral sense of all reasonable persons as to what is right and proper." *State v. Isom*, 313 Or 391, 401, 837 P2d 491 (1992) (citing *Cannon v. Gladden*, 203 Or 629, 632, 281 P2d 233 (1955)). But what does that mean? What factors are *constitutionally* relevant?

At the outset, I emphasize—and we all agree on—what is *not* relevant. Judges' personal beliefs as to reasonableness or good public policy are irrelevant to the constitutional inquiry. Constitutional protections do not, and cannot, vary according to judges' personal predilections. But neither do they vary according to popular opinion. Rather, their content is judicially determined and judicially enforced. To the extent that a constitutional protection depends (as here) on notions of "reasonableness," the determination of the limits of such "reasonableness" is, necessarily, a judicial determination.

Thus, we must not impose our "subjective" views to thwart the popularly expressed will of the people of Oregon. But neither can we abdicate our sworn constitutional role and responsibility by saying: "The people passed this law, so it must be constitutional."[2]

The state argues here, as it has elsewhere, *see, e.g., State v. Shoemaker*, 155 Or App 416, 965 P2d 418, *rev den* 328 Or 41 (1998), that the fact that a substantial majority of Oregonians voted for Measure 11 necessarily demonstrates that the imposition of Measure 11 sentences could not "shock the conscience" of reasonable people. That argument fails for two reasons, one legal, and the other factual. The legal flaw

---

[2] As Judge Brewer states so eloquently in his concurrence, "a faint but persistent voice warns that my personal sense of fairness is a pitifully small spoke in the diverse wheel of community values." 166 Or App at 582. I couldn't agree more.

However, I *cannot* accept the premise that implicitly underlies both the lead opinion and Judge Brewer's concurrence—that, because "reasonableness" is so ephemeral and it is so difficult to draw constitutionally principled lines, any result other than imposition of the Measure 11 sentence is innately, and injudiciously, "subjective."

*Huddleston* clearly, and correctly, contemplates that there can be instances in which imposition of a Measure 11 sentence will offend Article I, section 16. It is *not* easy to draw constitutionally principled lines. *See, e.g.,* 166 Or App at 586 (How are we to "conclude that three years and four months more [than a sentencing guidelines sentence] is too much?"). But we can, and must, do so.

in the state's premise is that it cannot be reconciled with *Huddleston*'s explicit acknowledgment of "as applied" challenges—*i.e.*, if the state were correct, there could *never* be an "as applied" challenge to a Measure 11 sentence.

The factual flaw in the state's position is that, although the people of Oregon overwhelming approved Measure 11, no one who voted on November 8, 1994, was asked, "If a 16-year-old has sex with his 13-year-old girlfriend, should he be sent to prison for more than 6 years?" Bluntly, although one can presume that the voters generally favored the imposition of harsher sentences for criminals, and even presume that the voters favored certain sentences for certain crimes, they expressed no opinion as to the imposition of a specific sentence in particular factual circumstances.

It thus devolves to us, constitutionally and collectively, to make an objective determination of the limits of "reasonableness." To be sure, our individual life experiences may play some subconscious role in that determination. But in the end, adhering to our oaths, our collective conclusion should represent "a fair average of truth and wisdom,"[3] an approximation of the reasonableness of the people of Oregon.

## ANALYSIS

Judge De Muniz's lead opinion generally assumes that *Solem v. Helm*, 463 US 277, 103 S Ct 3001, 77 L Ed 2d 637 (1983), affords principled guidance in determining whether a sentence is not "proportional to the offense" under Article I, section 16, of the Oregon Constitution. I agree. Although *Solem* is not precisely tailored to the sort of "as applied" constitutional challenge *Huddleston* invites, it does

---

[3] "You may say that there is no assurance that judges will interpret the *mores* of their day more wisely and truly than other men. I am not disposed to deny this, but in my view it is quite beside the point. The point is rather that this power of interpretation must be lodged somewhere, and the custom of the constitution has lodged it in the judges. If they are to fulfill their function as judges, it could hardly be lodged elsewhere. Their conclusions must, indeed, be subject to constant testing and retesting, revision and readjustment; but if they act with conscience and intelligence, they ought to attain in their conclusions a fair average of truth and wisdom." Benjamin N. Cardozo, *The Nature of the Judicial Process*, 135-36 (Yale ed 1975).

identify a reasoned analytic framework, obviating *ad hoc* decision making.[4]

Under *Solem*, the court is to consider: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other crimes in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. 463 US at 292. Using those factors for guidance, I conclude that imposition of the Measure 11-prescribed sentence in this case would be unconstitutional under the proportionality provision of Article I, section 16, of the Oregon Constitution.

## I.   GRAVITY OF THE OFFENSE/ HARSHNESS OF THE PENALTY

In examining the "gravity of the offense," courts evaluate the *specific* facts surrounding the *particular* defendant's offense, in addition to the nature of the crime in a more generic sense. For example, in *Solem* itself, the Supreme Court, in evaluating the "gravity of the offense," considered the minimal dollar amount of the "no account" check uttered by the defendant and noted that the defendant was an alcoholic, not a "professional criminal." 463 US at 296-97 n 22. *See also United States v. Darby*, 744 F2d 1508, 1526-27 n 11 (11th Cir 1984), *cert den sub nom Yamanis v. United States*, 471 US 1100 (1985) (stating that under the *Solem* test, "the court may consider the crime actually committed as well as the crime generally proscribed"); *State v. Lindsey*, 203 Wis 2d 423, 554 NW2d 215, 219-20, *rev den* 205 Wis 2d 136, 555 NW2d 816 (1996) (examining the ages of the parties and other specifics of the defendant's offense, sexual assault of a child, under the first step of the *Solem* analysis); *State v. Bartlett*, 164 Ariz 229, 792 P2d 692, 697-98 (1990), *vac'd sub nom Arizona v. Bartlett*, 501 US 1246, 111 S Ct 2880, 115 L

---

[1] As the lead opinion and Judge Brewer's concurrence note, the vitality of the *Solem* test may be in doubt for federal constitutional purposes, given the Court's later plurality decision in *Harmelin v. Michigan*, 501 US 957, 111 S Ct 2680, 115 L Ed 2d 836 (1991). *See* 166 Or App at 571-72; 166 Or App at 582-83 (Brewer, J., concurring). However, the United States Supreme Court's retreat from its proportionality analysis on the ground that "the Eighth Amendment contains no proportionality guarantee," *Harmelin*, 501 US at 965, is inapposite to Article I, section 16, jurisprudence, because it is undisputed that Article I, section 16, *does* contain an explicit proportionality guarantee.

Ed 2d 1046 (1991) (considering the age of the parties, the consensual and nonviolent nature of the sexual intercourse, and the defendant's personal characteristics and maturity in evaluating whether the sentence imposed on a 23-year-old defendant for two counts of sexual conduct with a minor was "cruel and unusual punishment" under the *Solem* test).

In assessing the "gravity of the offense," we identify several salient circumstances of this particular crime:

• Defendant was 16-years-old, and the victim was slightly more than three years younger than defendant.

• Defendant and the victim were, by their own description, "boyfriend" and "girlfriend." That is, the charged conduct occurred in the context of a continuing, voluntary relationship.

• Defendant mistakenly believed that his girlfriend was 14.

• Defendant's girlfriend initiated the contact by going into his bedroom, waking him up, joining him in bed, and engaging in sexual foreplay.

• At the time of the statutory rape, defendant's history consisted primarily of juvenile referrals—*not* adjudications—for matters such as possession of tobacco and alcohol. Thus, at the time of the crime, defendant had no juvenile adjudications that would qualify as "criminal history" as that term is generally used in the context of sentencing.[5]

The lead opinion's treatment of the first *Solem* factor reduces to two propositions: (1) Oregon has historically treated statutory rape as a "serious crime," 166 Or App at 575-76; and (2) before the enactment of Measure 11, under former sentencing schemes, statutory rape could be punished by lengthy imprisonment. 166 Or App at 573-76. Both of those propositions are true; both, ultimately, miss the point.

[5] Defendant's lack of a criminal history belies the lead opinion's efforts to characterize him as a "deplorable" and incorrigible criminal. 166 Or App at 578-79. Similarly, the fact that defendant subsequently was adjudicated in the juvenile system on a charge of third-degree robbery is not relevant to a determination of whether a sentence of six-and-a-half years is unconstitutionally disproportionate to an unrelated crime of statutory rape that was committed well before the robbery.

The lead opinion states that, under the sentencing guidelines that controlled sentencing for second-degree rape prior to the enactment of ORS 137.700 and ORS 137.707, this crime carried "a presumptive sentence of 35 months' imprisonment." 166 Or App at 575. Actually, the crime of second-degree rape carried a presumptive sentence of anything from optional probation to 45 months' imprisonment, given its ranking on the "crime seriousness scale" of the sentencing guidelines. No mandatory minimum sentence was required. Under the indeterminate sentencing scheme set forth in ORS 161.605(2), as the lead opinion notes, up to 10 years' imprisonment is authorized for the crime. *Id.* at 575-76. Again, no mandatory minimum sentence was required.

It is undisputed that statutory rape has historically been a "serious·crime."[6] What the majority ignores, however, is that, historically, juveniles who engaged in such conduct were not automatically subject to imprisonment. From 1907 until 1995, after the enactment of Measure 11, Oregon adhered to a "rehabilitation model" of juvenile justice that did not treat delinquent children as criminals but as wards to be protected. *See State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 568-69, 857 P2d 560 (1993).[7] Unless a juvenile was affirmatively remanded to adult court, he or she would be adjudicated in the juvenile system, which applied a flexible indeterminate dispositional scheme. *See, e.g., Reynolds*, 317 Or at 569 n 9. There are *no* reported cases of a juvenile accused of statutory rape being remanded to an Oregon criminal court.

Historically, Oregon treated adult and juvenile offenders qualitatively differently. Under *all* of Oregon's previous sentencing schemes, the sanction imposed for statutory rape could vary with the circumstances of the particular

---

[6] Statutory rape is, as the majority emphasizes, a Class B felony. In virtually all cases involving Class B felonies, the imposition of a sentence of at least 75 months may be fully warranted. However, unless we are prepared to hold that the imposition of a Measure 11 sentence is appropriate in *all* cases involving Class B felonies, the classification of the crime cannot, by itself, be dispositive. Such a "facial" approach cannot be squared with *Huddleston*'s contemplation of "as applied" challenges.

[7] In 1995, the legislature enacted ORS 419C.001, which redefined the purposes of the juvenile system in delinquency cases as "to protect the public and reduce juvenile delinquency and to provide fair and impartial procedures for the * * * disposition of allegations of delinquent conduct."

crime. Bluntly: Some statutory rapes were "graver" than others, and the "harshness" of the punishment concomitantly varied. One historical reality remains: Before Measure 11, there were no reported cases of Oregon juvenile *ever* being sentenced to six years in prison for statutory rape.

## II. SENTENCES IMPOSED FOR OTHER CRIMES IN OREGON

In *Solem*, the Court stated: "If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." 463 US at 291. In this case, that comparison is shocking.

Under Measure 11 (ORS 137.707), defendant will receive the *same* 75-month mandatory sentence as a defendant convicted of manslaughter in the second degree. That crime includes reckless homicide, or criminally negligent homicide that causes the death of a child under the age of 14 if the perpetrator has previously assaulted or tortured the child. ORS 163.125.

Under Measure 11, defendant will receive a *greater* sentence than defendants convicted of:

• Robbery in the second degree, which involves threats of physical force during a theft, committed either with a weapon or with an accomplice (70 months). ORS 164.405; ORS 137.707(4)(a)(R).

• Assault in the second degree, which involves either intentionally or knowingly causing serious physical injury to another, or intentionally or knowingly causing physical injury to another by means of a deadly or dangerous weapon, or recklessly causing serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life (70 months). ORS 163.175; ORS 137.707(4)(a)(G).

• Compelling prostitution, which involves the use of force or intimidation to compel another to engage in prostitution, or causing a child to engage in prostitution (70 months). ORS 167.017; ORS 137.707(4)(b)(C).

• Using a child in a display of sexually explicit conduct, which involves the creation of child pornography (70 months). ORS 163.670; ORS 137.707(4)(b)(B).

• Stalking, which involves knowingly alarming or coercing another person by engaging in repeated and unwanted contact with the person in violation of a court protective order (a presumptive sentence of anything from optional probation to 45 months' imprisonment). ORS 163.732.

• Dismembering, mutilating, or engaging in sexual activity with a corpse (a presumptive sentence of probation to 16 months' imprisonment). ORS 166.087.

With few exceptions, each of those crimes must be committed either intentionally or knowingly.[8] Conversely, statutory rape is a strict liability crime. The victim's "consent" to—here, *initiation of*—the conduct is immaterial.[9] Moreover, the state need not prove that a defendant acted intentionally, knowingly, recklessly, or even negligently. In fact, the sentencing court in this case specifically found that defendant did *not* know that the victim was under 14.

In sum, under Oregon law, this 16-year-old defendant would have received a lesser punishment if, instead of having sex with his girlfriend at her initiation, he had compelled her to engage in prostitution, used her in creating child pornography, or sexually abused her corpse. Disproportionality is manifest.

Finally, and contrary to the lead opinion's assertion, *State v. Rhodes*, 149 Or App 118, 941 P2d 1072 (1997), *rev den* 326 Or 390 (1998), does not "severely undercut" the foregoing analysis. 166 Or App at 580. Our constitutional inquiry

---

[8] Second-degree assault may involve a reckless mental state if a weapon is used and the circumstances manifest extreme indifference to the value of human life, ORS 163.175, and manslaughter may be committed negligently if the perpetrator previously abused or tortured the child victim. ORS 163.125.

[9] The girlfriend, of course, also could have been charged with delinquency based on her conduct, given that defendant, too, is not capable of consenting to sexual activity due to his age. *See, e.g.,* ORS 163.445 (a person commits sexual misconduct, a Class C misdemeanor, for engaging in sexual intercourse with an unmarried person under 18 years of age); ORS 163.315(1)(a) (persons under 18 years of age are incapable of consenting to sexual acts).

involves far more than simple fact-matching, but even so, the facts in *Rhodes* were dramatically different from those here. In *Rhodes*, the defendant repeatedly (on approximately 20 occasions) molested his nine-year-old sister while she was sleeping—and continued to do so after having been disciplined by his mother for such conduct. 149 Or App at 122-23. It was precisely those factors that we emphasized in sustaining the imposition of the Measure 11 sentence in that case—the incestuous nature of the abuse, its repeated character, and the fact that it persisted after the defendant was disciplined. *Id.* Here, in contrast, defendant and his girlfriend were unrelated; she initiated the sexual activity, of which she was fully aware; and defendant had never been disciplined for such conduct—and indeed, given his belief concerning his girlfriend's age, had no reason to know that the conduct was unlawful. A reasonable person would view, and treat, the circumstances in *Rhodes* as being objectively, qualitatively different from the circumstances presented here.

Likewise, *State v. Teague*, 215 Or 609, 336 P2d 388 (1959), also cited in the lead opinion, 166 Or App at 572-73, 578-79, is in no way analogous to this case. In *Teague*, the court upheld a 12-year *indeterminate* sentence for forgery, but went on to note that "[i]f the facts of the case and conduct of the defendant warrant[,]" then the Board of Parole could provide "suitable relief" to the defendant. 215 Or at 611. Here, by comparison, the Board of Parole and Post-Prison Supervision has no authority to reduce any part of a mandatory Measure 11 sentence of 75 months. The sentence in *Teague* was constitutional because the sentencing scheme, when combined with the parole scheme, took into account the circumstances of the crime and the behavior of the defendant in determining the defendant's actual length of imprisonment. Measure 11 makes no such allowances.

### III.   SENTENCES IN OTHER JURISDICTIONS FOR STATUTORY RAPE

The lead opinion, in a footnote, briefly summarizes some statutory rape law from half a dozen states, and implicitly concludes that Oregon law is no more harsh than the

laws of some other states. 166 Or App at 577 n 8. With respect, that is wrong.

The lead opinion does indeed identify several states that have mandatory minimum sentences somewhat similar to Oregon's mandatory minimum, and several that have maximum indeterminate sentences that exceed the Oregon maximum indeterminate sentence of 10 years for a Class B felony. But that ignores the real issue: *No* state other than Oregon requires a 16-year-old to be tried as an adult for statutory rape and sentenced as an adult to 75 months' imprisonment. When it comes to sentencing 16-year-olds as adults for statutory rape, Oregon is in a league of its own.

For example, the lead opinion indicates that, in Idaho, the type of statutory rape at issue here is punishable by anything from one year to life imprisonment in the adult criminal system. 166 Or App at 577 n 8. The lead opinion does not, however, mention that a 16-year-old charged with that crime would not necessarily be tried as an adult. Only if a juvenile court specifically exercised its discretion to waive its jurisdiction would the juvenile be tried in adult court. Moreover, even if the juvenile court did waive the juvenile into an adult court, that court could, at its discretion, sentence the 16-year-old as a juvenile if it found that adult sentencing measures were inappropriate. Idaho Code § 20-509.

Montana is similar. There, as the lead opinion states, the type of statutory rape at issue here is punishable in adult court by a mandatory minimum sentence of four years. 166 Or App at 577 n 8; Mont Code Ann § 45-5-503. Again, however, the majority fails to point out that a 16-year-old would not necessarily be tried in adult court for that offense. *See* Mont Code Ann § 41-5-206 (charges may be filed in either juvenile or adult court).

The same is true in Utah, where, as the lead opinion notes, statutory rape carries a mandatory minimum sentence of six years if tried in adult court. 166 Or App at 577 n 8; Utah Code Ann § 76-5-402.1. Again, however, a 16-year-old in Utah need not be tried in adult court. Rather, the juvenile court may waive the juvenile into adult court only if the court finds that it "would be contrary to the best interests of the

minor or of the public for the juvenile court to retain jurisdiction." Utah Code Ann § 78-3a-603(2)(b).

In Washington, as the lead opinion notes, statutory rape of a child under 14, if tried in adult court, can result in a sentence from seven years, six months to 20 years, five months. 166 Or App at 577 n 8. However, a 16-year-old would not be tried as an adult for that crime unless the child had a criminal history including a previous serious violent offense. Wash Rev Code 13.40.110.[10]

Similarly, a number of states—*e.g.*, Alabama, Arizona, Delaware, Kentucky, Alaska, Hawaii, Georgia, Illinois, Iowa, and Louisiana—permit, but do not require, that a 16-year-old be tried in adult court for statutory rape. In fact, in Connecticut, a 16-year-old simply cannot be tried as an adult for this type of statutory rape.[11]

Oregon appears to be unique—not in characterizing statutory rape as a serious offense, but in insisting that juveniles charged with statutory rape be punished in exactly the same manner as adults charged with statutory rape. Most states have excluded certain serious offenses from juvenile court jurisdiction, and about a dozen states, like Oregon, have mandatory minimum sentences for certain crimes committed by juveniles. *See* Office of Juvenile Justice and Delinquency Prevention, U. S. Dep't. of Justice, *State Responses to Serious and Violent Juvenile Crime*, xii (1996). However, no other state appears to require mandatory trial in the adult criminal system for juveniles aged 15 or older charged with statutory rape, much less to require a mandatory minimum sentence of more than six years' imprisonment. While it would be theoretically possible in many states for a juvenile to be tried as an adult for such an offense, only in Oregon are courts required to try juveniles as adults and to impose mandatory adult sentences without discretion to consider the circumstances of the juveniles involved, and the circumstances of the offense in question.

---

[10] The type of statutory rape that occurred here is not considered a "serious violent offense" under Washington law. Wash Rev Code § 9.94A.030(34)(a).

[11] In some states, such as Nevada, defendant's conduct would not even constitute a crime. 166 Or App at 577 n 8.

Oregon is alone.

I return to the essential question: Is 75 months' imprisonment an unconstitutionally disproportionate punishment for defendant's conduct?

Ultimately, this may be a case of "the sum being greater than the parts." I will not pretend that any of the individual *Solem* factors is, by itself, sufficient to render the 75-month sentence shocking to the conscience of all reasonable people. Nor are any of the particular circumstances — *e.g.*, defendant's age, the victim's initiation of the crime, the difference in their ages, the nature of their relationship — individually dispositive. Indeed, given the nature of our craft, it is easy to over-analyze each factor and to reduce the inquiry to an abstract intellectual exercise.[12] But in the end, the question is real and stark: Should this 16-year-old boy spend more than six years in prison for having sex with his 13-year-old girlfriend at her initiation?

Justice, conscience, and the constitution admit only one answer.

Armstrong, Linder and Wollheim, JJ., join in this dissent.

---

[12] "There is an old legend that on one occasion God prayed, and his prayer was 'Be it my will that my justice be ruled by my mercy.' That is a prayer which we all need to utter at times when the demon of formalism tempts the intellect with the lure of scientific order." Cardozo, *The Nature of the Judicial Process* at 66.